St. Louis Piano Manufacturing Company, Respondent, *v.* Louis C. Merkel *et al.*, Appellants.

305
n 398

### February 28, 1876.

It is essential to the idea of a trade-mark, by which any particular manufactured article is designated, that the mark should be annexed to, or stamped, printed, carved, or engraved upon, the article as the same is offered for sale; and, if the article has not been thus distinguished, its manufacturer cannot be said to have appropriated any particular trademark.

Appeal from St. Louis Circuit Court.

*Injunction dissolved and judgment for appellants.*

*Cline, Jamison & Day*, for appellants, cited: Candee *v.* Deere, 54 Ill. 434; Upton on Trade-Marks, 22, 85, 86,

87, 98, 179 ; Colloday v. Baird, Am. T.-M. Cas. 257–259 ;
Rowley v. Houghton, Am. T.-M. Cas. 489 ; Browne on
Trade-Marks, secs. 54, 66, 67, 129, 310, 311, 312, 335,
680 ; Amoskeag Mfg. Co. v. Spear, Am. T.-M. Cas. 93,
96 ; Corwin v. Daly, Am. T.-M. Cas. 265 ; Phelan v.
Wright, Am. T.-M. Cas. 307 ; Wolfe v. Godard, Am. T.-M.
Cas. 226 ; Town v. Stitson, Am. T.-M. Cas. 514; Canal
Co. v. Clark, 13 Wall. 327.

Finkelnburg & Rassieur and E. C. Kehr, for respondent,
cited : Rudde v. Norman, 14 Eng. Law Rep. Eq. 348 ;
Canal Co. v. Clark, 13 Wall. 311 ; Lea et al. v. Wolff et al.,
1 N. Y. ; Knott v. Morgan, 2 Keen, 213 ; 2 R. I. 569
("Pain Killer ") ; Coffeen v. Brenton, 4 McLean, 516 ;
Williams v. Spruce, 25 How. (N. Y.) Pr. 366 ; Williams
v. Bosworth, 2 Bos. (N. Y.) 7 ; Newman v. Alvord, 49
Barb. 588 ; Messerole v. Tynberg, 4 Abb. Pr. (N. S.) 414;
Gillott v. Esterbrook, 47 Barb. 455 ; Amoskeag Mfg. Co.
v. Spear, 2 Sandf. (N. Y.) 604 ; Stokes v. Landgraff, 17
Barb. 610 ; Candis v. Deere, 54 Ill. 439 ; Howard v. Hen-
riques, 3 Sandf. (N. Y.) 725 ; Christy v. Murphy, 12 How.
(N. Y.) Pr. 78 ; Suly v. Fisher, 11 Sim. ; Canham v.
Jones, 2 Ves. & Bea. 218 ; Perry v. Truefit, 6 Beav. 73.

GANTT, P. J., delivered the opinion of the court.

The St. Louis Piano Manufacturing Company instituted
proceedings against the appellants, charging them with
pirating its trade-mark, and asking an injunction, and for
damages.    It declared that it manufactured pianos of a
particular kind, and distinguished its manufacture as the
" Bell Treble " Piano.    This name, it contended, it had
appropriated.    Its work was known by it, and defendants
had done it a wrong by usurping it.    It stated that it first
adopted the name " Bell Treble " as a trade-mark, under
which name it has ever since extensively advertised its
pianos, by circulars and newspaper advertisements, having
the words " Bell Treble," in prominent letters, usually

stamped across the representation of a piano; which name served to distinguish plaintiff's pianos and business from those of other persons.

The defendants answered, ignoring the advertisement of plaintiff's pianos, as alleged, and denied that they had ever used the words "Bell Treble" as a trade-mark for their work. They denied that the words were first used by plaintiff to distinguish its work. They denied any appropriation of the term by the plaintiff. They claimed that the term had been long known to musicians and manufacturers of pianos; that it was descriptive of a particular "part, or attachment, or appliance to a piano," which said part of the piano all manufacturers of pianos have a perfect and undisputed right, in this and other countries, to use; that one of the defendants had actually used the term, and manufactured pianos in St. Louis to which the name was affixed; that defendants have never manufactured or sold any pianos to which the words "Bell Treble" were affixed, or in any way appeared on the pianos; and that the plaintiff had never manufactured or sold any pianos to which the said words were affixed, or in any way appeared; that plaintiff could only appropriate the term as a trade-mark by so affixing it; and, consequently, defendants prayed for a dissolution of the injunction which the court had preliminarily granted. A reply to this answer was filed.

The court, at the hearing, perpetuated the injunction, and, after the usual motions, defendants appealed to the general term, and to this court.

The bill of exceptions shows a great volume of testimony directed to the question of the priority of plaintiff's right to the use of the term "Bell Treble." It did not appear, and, indeed, it is not alleged in the petition, that the name "Bell Treble" was affixed to, or marked on, the goods of the plaintiff. It was only claimed that it was used in its advertisements. The defendants appear to have distinguished some pianos of their manufacture with this name,

by marking it on them.   The manner of putting the mark
on the instrument does not clearly appear.   Apparently it
was done by pasting a label on part of the piano.   This
was done some time after the plaintiff had advertised its
pianos as the "Bell Treble" piano.   The evidence seems
to us greatly to preponderate in favor of the conclusion that
the plaintiff was the first manufacturer which used the term
"Bell Treble" in its advertisements to distinguish its work.
We are also of opinion that the term itself is a combination
of words which was capable of appropriation as a trade-
mark.   The question which has given us serious trouble is
whether the plaintiff, which was, as we think, the first
manufacturer which attempted to appropriate the term as a
trade-mark, ever did anything effectual for the purpose of
such appropriation.

We have seen that it was never affixed to any work of the
plaintiff.   Of course, in some cases, the work or manufac-
ture itself which is to be thus distinguished cannot receive
the mark, as would be the case in respect of a powder or
liquid which is advertised or offered for sale.   But, in such
instances, the package or bottle containing the article can
receive, and, as far as we are able to see, always has received,
the mark in which a property is claimed.   The very term
employed seems to require that the article distinguished, or
which the manufacturer or salesman seeks to distinguish,
as coming within the designated description should bear the
*mark* which gives it its character.   A trade-mark which is
not in some manner put upon or affixed to the article indi-
cated by it is almost a contradiction in terms.   The article
can scarcely be said to have the mark, in any natural or
reasonable sense.

The treatises in which this subject is discussed leave
something to be desired.   The first thing they should con-
tain is a definition of the term "trade-mark."   This defi-
nition could not be given in a breath.   But the subject
of it should be taken up, pursued, and disposed of before

proceeding to examine the legal rights and liabilities that may be claimed and incurred in respect of it. A comprehensive and accurate definition of the term would, of course, require an extended examination of the cases in which it had been judicially discussed. It would be a matter of laborious criticism to ascertain what qualities were, and what were not, of the essence of a trade-mark such as the law recognizes and protects. But, when the demonstration was completed, the best foundation would perhaps have been laid for the treatise proposed.

Obviously it is no part of the business of a court to furnish such a definition. When a controversy comes before a court respecting a trade-mark, and the fact of a particular symbol being such in a legal sense is controverted, the court should confine its inquiry to the particulars which are the subject of the dispute. Thus, in most instances, only one or two of the properties of a trade-mark will be examined in any case, and upon these the conclusion of the court may be, and often is, of a negative import. A court may inquire whether some particular quality in which a symbol is defective be essential to the legal idea of a trade-mark. When that point is settled, the controversy is determined; that being the only dispute between the litigants. But such a decision will furnish very imperfect elements of a definition.

From the best examination we are able to make of the subject, we are led to the conclusion that, so far as an article of merchandise is concerned, it can only be said to be distinguished by a trade-mark when that mark is connected with, annexed to, or stamped, printed, carved, or engraved upon the article as the same is offered for sale. The purchaser must be told that the particular thing he proposes to buy is of this or that character, by something connected with the thing itself. He must not be referred to some circular or advertisement for this assurance, nor can he receive it from the representations, by word of mouth, of the manufacturer or salesman. The impossibility of

putting any restrictions upon the last may be a sufficient reason for not making the attempt; but the other branch of the proposition seems to be equally settled by judicial opinion. " A symbol does not become a trade-mark until it is actually stamped upon, or otherwise affixed to, the goods to be sold," is the language of Browne, in his treatise on Trade-Marks, section 311. This remark seems abundantly justified by the decisions of the courts which have adjudicated respecting trade-marks, besides being in harmony with what any one of ordinary understanding would infer from the name itself.

In 2 Brewster, 303 (Am. Trade-Mark Cases, 486–489), Judge Ludlow's attention was drawn to this point. *Rowly* v. *Houghton*. This conclusion was in conformity with a former decision that " no right can be absolute in a name, as a name merely. It is only *when that name is printed or stamped upon a particular label or jar, and thus becomes identified with a particular style and quality of goods*, that it becomes a trade-mark."

In 54 Illinois, 439 (456, 457, for the passage cited), this point underwent a careful and accurate examination. The case was that of *Candee, Swan & Co.* v. *Deere & Co.* Mr. Justice Breese quotes the definition of the term trade-mark from Upton, and announces, as a conclusion which has his concurrence, that it is " a symbol, or emblem, or mark which a tradesman puts upon, or wraps, or attaches in some way to the goods he manufactures ;   *   *   *   the name, symbol, figure, letter, form, or device adopted or used by a manufacturer or merchant, in order to designate the goods he manufactures or sells,   *   *   *   to the end that they may be known in the market as his."

Without quoting more largely from this decision, we content ourselves with saying that we adopt the result of it, as far as the present question is concerned. We think that a trade-mark must be annexed to the article offered for sale ; and that, if not so annexed, the article cannot be said to

have a trade-mark.    In the case at bar, the pianos of plaintiff had no such symbol affixed, annexed, stamped, or engraved on them as plaintiff claims to belong to it, and it follows that, in our judgment, the plaintiff was not entitled to the injunction for which it prayed.

We have had the advantage of seeing a copy of a very able argument made in the Circuit Court, in this cause, in behalf of the St. Louis Piano Manufacturing Company.    It leaves, we think, no room for regretting that its side of the controversy was not otherwise advocated in this court.    It is laborious and ingenious, but we are of opinion that it struggles with difficulties which are insurmountable.    In the citation of cases, in which, as the learned counsel who prepared it contend that the vital and necessary characteristic of a trade-mark, as declared by Upton, Browne, Ludlow, and Breese, is at least *ignored*, they have not been able to find any repudiation of that characteristic.    At most they have found partial definitions into which this particular element does not enter.    But it is needless to enlarge upon the obvious fallacy which lurks in such reasoning.

It is observable that some of the cases thus cited, to prove negatively that a trade-mark need not be affixed to the merchandise offered for sale, might be fairly quoted to demonstrate that such was *not* the opinion of the learned judges who pronounced them.    One of the cases thus cited for the Piano Manufacturing Company, in the Circuit Court, is that of *The Delaware & Hudson Canal Company* v. *Clark*, 13 Wall. 311.    The learned counsel for the Piano Company contend that it nowhere appears in the authoritative opinion of Mr. Justice Strong, in this case, that the Lackawanna coal had ever been marked with that name; that the name had ever been affixed to the merchandise, or that such connection between the merchandise and the name was important.    That case turned upon the right of any one to appropriate such a term as Lackawanna.    This was the name of the region of country where the coal in

question was produced. The court held that it was not the subject of appropriation, any more than " Kentucky hemp," "Virginia tobacco," etc., could be so appropriated. To this point the attention of the court was mainly directed. But on page 322 may be found a passage which the respondent in this case would perhaps not approve : " The office of a trade-mark is to point out distinctively the origin or ownership of the article to which *it is affixed* ; or, in other words, to give notice who was the producer." Now, of course, no one would require that each lump, or any lump, of coal should bear this mark. But the warehouse, store, yard, or other receptacle of it would apparently require such a designation, in the opinion of Judge Strong, or else the trade-mark would not fulfill its office, and would, in fact, be no trade-mark, in either a popular or legal sense.

We are of opinion, as before stated, that a trade-mark must be affixed to the merchandise of which it is distinctive ; that the failure of the plaintiff to affix the term or name " Bell Treble" to pianos of its manufacture disables it from claiming that defendants have injured it by affixing it to theirs ; and, consequently, that the judgment of the Circuit Court must be reversed, the injunction dissolved, and final judgment given for defendants (appellants) in this court. All the judges concur