## William J. Moxley Co. v. Braun & Fitts Co.

1. TRADE-MARKS—*General Requisites.*—It is not necessary that a device shall be absolutely new or novel to entitle it to protection as a trade-mark. If it is new in its application to a particular merchandise it is entitled to protection as such.

2. SAME—*Invasion of the Right to Use a Trade-mark.*—The essence of the wrong of invading the right to the exclusive use of a trade-mark,

consists in the sale of the goods of one manufacturer or vender for those of another by means of such trade-mark.

3. SAME—*To What a Trade-mark Owes Its Existence.*—A trade-mark owes its existence to the fact that it is actually affixed to a vendible commodity.

4. SAME—*What is Not to be Considered as a Fraud or Deception in.* —The fact that the trade-mark of a manufacturer of butterine contains the words " The only high grade," is not to be construed as a statement that he is the only manufacturer of high grade butterine, or that the use of the word " only " discloses fraud or deception of such a character as to deprive him of the protection of a court of equity in its use as a trade-mark.

Bill to Restrain the Infringement of a Trade-mark.—Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the March term, 1900. Affirmed. Mr. Justice HORTON dissenting. Opinion filed January 29, 1901.

**Statement by the Court.**—This is a bill in equity filed by appellee, charging appellant with infringement of trade-mark and unfair competition in trade. The Superior Court allowed a preliminary injunction which, upon final hearing, was made perpetual, and from the decree so directing and referring the cause to a master for an accounting as to profits and damages this appeal is prosecuted.

Appellee avers in its bill of complaint that it has for many years been engaged in the manufacture and sale of oleomargarine, and that by reason of the superior quality of the ingredients, and the skill and care used in manufacturing, its products have acquired a high reputation in the markets, and its business has become a source of great profit. The trade-mark in controversy is described in the bill as " a simulation of a seal with serrated edges containing the words ' The Only High Grade,' " and was adopted in 1893, " as its general trade-mark for all its various brands of oleomargarine or butterine." This device, with the words " trade-mark " on the seal, has been applied to its wrappers and to the outside of all its packages containing butterine, and has been used upon its stationery and advertising matter. It is alleged to be appellee's sole and exclusive trade-mark, and that it has been continuously so used since its adoption in 1893, " not only as a common law trade-mark, but also as a label or form of advertising," for

which appellee has expended annually a large sum of money. It is charged that appellant began several years after the device had been adopted by appellee, and had become well known, to use a substantial copy or imitation of said trade-mark upon oleomargarine of its own manufacture, put up in boxes, packages or pails in imitation of appellee's goods, by which purchasers are liable to, and have been and are being deceived, and induced to purchase appellant's goods believing they are obtaining appellee's.

Copies of the device and label as used by the respective parties were introduced as exhibits. Appellee's device is in the form of a circular seal, with serrated edges, of a red color, containing in large white letter the words "The Only" at the top of the seal in semi-circular form; extending across the center is the word "High" and in circular form at the bottom, the word "Grade." The words "trade" and "mark," are printed in small black letters, respectively above and below the word "High."

The label used by appellant, of which complaint is made, is likewise a circular seal, of about the same size as appellee's, with indentures of its edge smaller and more numerous, but not so deep as those of appellee's. Its color likewise is red, although of a slightly lighter shade. It contains the words, " Wm. J. Moxley's " in white letters of medium size, printed in circular form at the top, the words " The finest " in smaller letters and " High Grade " in large letters across the center, and at the bottom the words " Goods Made," also in large letters, printed in circular form. It appears that blue, green and possibly other colors have sometimes been used by appellee. The latter registered its device as a trademark in the patent office at Washington in October, 1894, and again in the office of the Secretary of State, at Springfield, in February, 1899.

Ephraim Banning, Thomas A. Banning, and Thomas F. Sheridan, attorneys for appellant.

Poole & Brown, attorneys for appellee; Taylor E. Brown, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended, in justification of appellant's conduct in adopting and using the label of which complaint is made, that the device in question, viz., the seal and accompanying words, used by appellee, is not entitled to protection as a valid trade-mark, because it is not a new thing in any respect; and that appellee is by this suit seeking to appropriate, and take away from the public, the right to use what are old words and devices.     It is not, however, necessary, as we understand it, that the device shall be absolutely new or novel.     If it is new in its application to the particular merchandise in controversy it may be entitled to protection. Bump on Trade-marks, 2d Ed., p. 483 *et seq.;* Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537.     In the last mentioned case, Mr. Chief Justice Fuller (p. 546) cites Canal Co. v. Clark, 13 Wallace, 311, in which it was said that where the right to exclusive use of a trade-mark is invaded, "the essence of the wrong consists in the sale of the goods of one manufacturer or vender as those of another."     While it is claimed by appellant that it used the words "high grade" on signs distributed to grocers as descriptive of its goods before appellee adopted them for its device, it is not, apparently, denied, that the use of the seal or device containing those words as a trade-mark upon packages of butterine or oleomargarine was first adopted by appellee.     "A trade-mark owes its existence to the fact that it is actually affixed to a vendible commodity."     Hazelton Boiler Co. v. Tripod Boiler Co., 142 Ill. 494 (507).     Appellee's claim is not based alone on a seal with serrated edges, nor on the particular words and contrasting colors used thereon, but on the combination of seal and words and colors together, constituting the device as a whole, applied to identify and advertise its particular merchandise.     In this view we do not deem it necessary to inquire at length whether, if the words "Only High Grade" alone constituted the whole device to which appellee lays claim as a trade-mark, such claim could be successfully maintained.

It is, however, insisted by appellant's counsel that the use

of the words " The Only High Grade " is deceptive and mis-
leading, and that a trade-mark which contains false repre-
sentations will not be protected.   If it be true that the
phrase or combination of words in question does in fact
contain a false assertion of a material fact made so as to
deceive the public, it ought not to receive the protection of
a court of equity.   Sebastian on Trade-marks, 36;  Bolander
v. Peterson, 136 Ill. 213.   As is said in Manhattan Medi-
cine Co. v. Wood, 108 U. S. 218 (225), " this is but an appli-
cation of the maxim that he who seeks equity must come
into court with clean hands."   " If his case discloses fraud
or deception or misrepresentation on his part, relief will be
denied."   The Superior Court found upon the hearing, and,
we think, correctly, that appellee is not now the only man-
ufacturer of high grade butterine.   In view of this finding
can it in truth be fairly adjudged that the use of that word
" only " discloses fraud or deception or misrepresentation ?
The conclusion of the learned chancellor in answer to this
suggestion was, " that after all, what the complainant puts
out to the world is simply an opinion."   It is urged by
appellant that said phrase " The Only High Grade " means
that appellee's goods are the only butterine in the market
of a high grade or character, which is false.   To justify
such meaning, however, additional words will have to be
supplied.   As the phrase stands, it does not constitute a
complete sentence and makes no positive assertion.   To
express the meaning suggested, it must be made to read,
" the only high grade butterine in the market," or to that
effect.   But with equal right the phrase may be made to
read, " the only high grade butterine we make," or to state
that appellee is the manufacturer of " only high grade but-
terine."   Either construction is forced.   The truth must,
we think, be admitted to be that the words in controversy
are not, when standing, as they do, alone by themselves,
fairly to be considered as descriptive.   They are rather to
be deemed arbitrary; not capable of exact definition; and
hence can not be said to assert a falsehood.   If, however,
they may be regarded as descriptive, the word " only "

seems to us to be in the nature of a mere catch word, express-
ive of nothing more than the opinion of appellee in a bom-
bastic way that the goods so marked are of such exalted
character as to be properly entitled to be considered the
only really high grade goods of the kind.   Such would, we
think, be the public understanding.   In like boastful spirit
appellant announces that its goods are " the finest high
grade goods made."   There is evidence tending to show
that when appellee adopted the device in controversy, it
was the only manufacturer in the country, making only a
single grade of butterine, always uniform and of a high
grade, all others making lower grades as well, and using
therefor cotton seed oil, or a lower and cheaper grade of
oleo.   It is not denied that appellee's butterine is high
grade.   No one purchasing it with such understanding
would therefore be deceived; whether it is the " only " high
grade or not is not therefore material.   To sustain appel-
lant's contention it would have to appear that the alleged
misrepresentations are not only misleading or untrue, but
that they are also material and do in fact mislead.   Dadir-
rian v. Yacubian, 98 Fed. Rep. 872 (671) cited by appellant's
counsel.

Passing over minor points, appellant's counsel insist that
there is here no infringement because, by ordinary atten-
tion, purchasers would have no difficulty in discriminating
between the device claimed as a trade-mark by appellee and
that used by appellant.   If purchasers of an article were
always careful to find out and to bear in mind the name of
the maker of the particular brand or kind they are in the
habit of using, and have found satisfactory, and were also
careful to examine before buying to ascertain that they are
getting that special manufacture, they could easily discrim-
inate in this case by looking at the label of appellant, and
could discover that the " high grade " butterine they are
receiving is appellant's.   But the ordinary buyer is not
thus particular.  " In many cases, where simulation is plain,
injunctions have been issued without proof of specific
instances of deception."   Fairbank Co. v. Bell Co., 77 Fed.

Rep. on p. 877.   There is evidence here, however, tending to show that dealers have in fact been at least temporarily misled by appellant's label.   We are not, therefore, left entirely to conjecture whether or not the ordinary observer is likely to be so misled and to mistake said label for appellee's trade-mark.   In Columbia Mill Co. v. Alcorn, 150 U. S. 460 (467), cited by appellant's counsel, it is said : " Even in the case of a valid trade-mark, the similarity of brands must be such as to mislead the ordinary observer."   We think it fairly appears that this has actually happened in the case at bar, with customers of appellee to whom appellant has caused its own goods to be sent, bearing its label, and put up in the same kind of pails or packages as those used by appellee.   It is true that appellant's label bears the name of " Wm. J. Moxley," and that instead of the word " only," appears in smaller type " the finest " preceding the words " high grade " in larger letters.   Seen side by side there is no difficulty in discovering the difference; but seen apart, they might readily be mistaken as representing the same brand or manufacture, more especially as appellee's trade-mark does not contain the maker's name on its face, but relies on the device as pointing to and distinguishing its product.

It is insisted by appellee that appellant's label is an imitation of the former's device and presents a clear case of unfair competition in trade, entitling appellee to the relief granted by the Superior Court upon that ground alone.   In this we are compelled to substantially concur.   There is evidence tending to show that appellant began the use of the label complained of about the beginning of the year 1899.   Notice was served early in February of that year that appellee regarded it as an infringement upon the latter's rights, and demand was made that it be abandoned. No reply was made and no attention paid to this request. No reason is suggested by appellant's counsel why, in all the wide range of devices which can be formulated and designed for a distinguishing mark, appellant should, in 1899, adopt a label which could be so readily taken for that

which appellee had been using for about six years before, which it had freely advertised as its own, and which had become known to the trade and the public as indicating oleomargarine of its manufacture. It may be true, as stated by appellant's counsel, quoting from Elgin Butter Co. v. Creamery Co., 155 Ill. 127 (135), that " fair and healthy competition in business is beneficial to the public and redounds to the welfare of the State," but there is no fair and healthy competition where one party seeks to appropriate to himself the benefit of the labor and skill and expenditure of another, by the deceptive and fraudulent method of simulating so nearly the latter's well known trade-mark or device, as to induce the purchase of the former's goods by those who suppose they are getting the latter's. If appellant had confined itself to securing the favor of the public by manufacturing and selling goods of a high character, marking them with a clearly distinctive label of its own, contrasting with those used by others so clearly and strongly as not to be mistaken, seeking to secure the sale of its goods so marked by reason alone of their superior excellence, it would not be open to any attack upon its conduct or motives. It is said by appellant's counsel that no false statements or representations on the part of appellant's officers or employes are shown in evidence. This may be conceded, but the query remains, how did it happen that appellant only discovered its need of a seal for its own goods after appellee had used and advertised such seal as its distinguishing device for so long a time ? It is said in Brown Chem. Co. v. Frederick Stearns & Co., 37 Fed. Rep., on p. 363, " No man, however honest his personal intentions, has a right to adopt and use so much of his rival's established trade-mark as will enable any dishonest trader into whose hands his goods may come, to sell them as the goods of his rival." And it is said in Fairbanks v. Bell Company, 77 Fed. Rep. 875, that " courts will not tolerate a deception devised to delude the consuming purchaser by simulating some well known and popular style of package." We have already alluded to the fact that appellee's trade-mark does not bear appellee's name upon its face, but it seems to be con-

ceded that by association it points "distinctively to the origin, or ownership, of the article to which it is applied." Canal Company v. Clark, 13 Wallace, 311 (323). On the other hand, appellant's name is placed upon its label. This last fact is emphasized by the latter's counsel as a distinguishing difference. We regard it, however, as in this case increasing the liability of injury to appellee. People familiar in a general way with appellee's device as making its particular brand of butterine, and subsequently seeing a similar label, also upon butterine, but bearing appellant's name, might readily forget appellee's name, and infer that appellant was the manufacturer of the goods associated in their minds with that kind of a seal, and so be led to order from appellant under the impression that the latter is manufacturer of the brand in fact made by appellee.

We are of opinion that the decree of the Superior Court is correct, and it must be affirmed.

Mr. Justice Horton, dissenting.