## COMPUTING CHEESE CUTTER COMPANY
### *v.* DUNN ET AL.

[No. 6,291. Filed April 30, 1909. Rehearing denied October 29, 1909. Transfer denied December 10, 1909.]

1. COMMERCE.—*Unfair Trade.*—*Deceit.*—No person has the right to represent his goods as those of another. p. 23.

2. TRADE-MARKS AND TRADE-NAMES.—*Similarity.*—*Deceit.*—*Injunction.*—Where a person or a corporation has assumed a name so similar to another that the business of the latter is being diverted, or is liable to diversion thereby, injunction will lie to prevent the use of such name by the former. p. 23.

3. FRAUD.—*Trade-Names.*—*Deceit.*—The use of a trade-name so similar to that of another that the public is deceived thereby, constitutes a fraud upon the person whose trade is thus despoiled. p. 24.

4. FRAUD.—*Elements.* — *Separation of.* — *Unfair Competition.*— The essence of unfair competition is fraud, and it is determined from a consideration of all the circumstances combined. p. 25.

5. TRADE-MARKS AND TRADE-NAMES.— "*Anderson Cheese Cutter Company.*"—*Right to Use.*—The use of the trade-name "Anderson Cheese Cutter Company" cannot ordinarily be restrained, the

local name "Anderson" being rightly used by any one, unless by long-continued use it has gained a secondary meaning, and the words "cheese cutter" being merely descriptive, may ordinarily be used by any one. p. 25.

6. TRADE-MARKS AND TRADE-NAMES.— *Exclusiveness.*— *Proprietary Rights.*—*Injunction.*—To restrain the defendant from using a certain trade-name it is not necessary for the plaintiff to establish an exclusive or proprietary right in the words used. p. 25.

7. FRAUD.—*Diversion of Mail.—Trade-Names.—Unfair Competition.*—A person or corporation whose mail is diverted to another because the latter, for fraudulent purposes, has adopted a similar trade name, has a right of action for fraud and may restrain the further use of such trade-name. p. 27.

8. INJUNCTION.— *Trade-Names.— Unfair Competition.—Complaint.*—A complaint by the "Computing Cheese Cutter Company" alleging that the defendants under the name of "Anderson Cheese Cutter Company" conspired to deprive the plaintiff of its business, that they "are deceiving the public and plaintiff's customers, thereby securing orders and profits intended for the plaintiff," and are wrongfully obtaining letters containing orders intended for the plaintiff, to plaintiff's damage, states a cause of action. Comstock, P. J., and Rabb, J., dissenting. p. 27.

From Madison Circuit Court; *John F. McClure,* Judge.

Suit by the Computing Cheese Cutter Company against Frank P. Dunn and others. From a judgment for defendants, plaintiff appeals. *Reversed.*

*Baggot & Pence,* for appellant.
*Kittinger & Diven,* for appellees.

ROBY, J.—This appeal is taken from a judgment rendered against appellant upon its refusal to plead further after a demurrer for want of facts had been sustained to its complaint. The averments of that pleading show that on May 7, 1903, the appellant was incorporated under the law of this State, its name and address being Computing Cheese Cutter Company, Anderson, Indiana; that it took over and succeeded to the property and good-will of a partnership which was conducted under the same name, its business being the manufacture and sale of a machine or device known as a cheese cutter; that it has, at large expense, advertised

said machine throughout the United States and Canada, and has an extensive and profitable trade throughout said territory, a large part of which consists of orders forwarded through the mail; that, on account of its location and name, mail is addressed to it by other than its exact name, as "The Anderson Cheese Cutter Company," "The Anderson Cheese Cutter," "The Anderson Computing Cheese Cutter," "The Anderson Computing Cheese Cutter Company," "The Cheese Cutter Company of Anderson," "Cheese Cutter Company," as well as by its true and exact name "Computing Cheese Cutter Company," and the plaintiff was, on March 18, 1904, and prior thereto had been, and ever since said time has been, often addressed by its customers and the public generally throughout the United States and through the United States mails in all and each of said names, and the orders were, during all of said time, sent to said plaintiff by each and all of said names, and many and various sums of money were remitted to the plaintiff by each and all of said names by the medium of the United States mails; that its business was and is of great value on account of the advertisement and manufacture and sale of a machine which gives satisfaction to the purchasers and is popular with the trade; that the defendants in March, 1904, conspired together for the purpose of pirating plaintiff's business, and wrongfully depriving it of trade which would come to it by reason of its reputation and trade name; that they incorporated a company under the name of the "Anderson Cheese Cutter Company," and then and there engaged in the manufacture and sale of a cheese cutter, resembling plaintiff's machine in style and appearance, and, by means of such resemblance, the similarity of names and the identity of location, are deceiving the public and the plaintiff's customers, thereby securing orders and profits intended for the plaintiff; that defendants have demanded and are now demanding and receiving all mail which comes to the Anderson post-office addressed other than by plaintiff's true and exact name, and

have thereby wrongfully obtained a large amount of business intended for plaintiff; that they are filling orders intended for plaintiff, and are answering its mail, whereby plaintiff has lost and is losing a large portion of its business and the profits thereof. Many other averments are made which need not be here noticed. The prayer is for an injunction and damages.

The law of trade-marks, trade-names. and unfair competition has of late years been the subject of much judicial consideration. It would be useless to cite or review the many cases involving infringement of trade-marks.

The sufficiency of the pleading under consideration depends upon whether its averments bring the case within the principle that nobody has any right to represent his goods as the goods of somebody else. *Seixo* v. *Provezende* (1866), L. R. 1 Ch. *192; *Reddaway* v. *Banham,* [1896] A. C. 199; *Saxlehner* v. *Apollinaris Co.,* [1897] 1 Ch. 893, 899; *Pillsbury-Washburn Flour Mills Co.* v. *Eagle* (1898), 86 Fed. 608, 41 L. R. A. 162, 166.

"When a person or business corporation has assumed the name of some other firm or corporation in the same line of business, or has adopted a name which so closely resembles that of a business rival, previously established, that the business of the latter is liable to be diverted and the public deceived on account of it, it has always been recognized as within the power or jurisdiction of a court of equity to restrain such person or new company from conducting business under the name assumed to the detriment of the older company." *Plant Seed Co.* v. *Michel Plant, etc., Co.* (1889), 37 Mo. App. 313.

The question of the right to relief against the infringement of a trade name in a given case depends upon the circumstances surrounding the adoption and advertisement of the name complained of, as much as upon its similarity to that of the complainant. The question in every case is whether the defendant is in fact attempting to sell his goods

as the goods of some one else. When this fact is found, a basis for relief is established. The fact is to be found, as other facts, from the evidence, including therein all the relevant circumstances and conditions. Identity of name may not, in itself, be sufficient. A lack of identity in name will not always suffice to prevent the extending of relief to one whose trade is being stolen. "What degree of resemblance between the names or devices is sufficient to warrant the interference of a court in cases of this kind is not capable of exact definition. It is, and must be, from the very nature of the case, mainly a question of fact, to be determined by the circumstances appearing in each particular case. In general, it may be said, if the resemblance is such as to mislead purchasers or those doing business with the person or corporation using the name, who are acting with ordinary caution, this is sufficient." *Atlas Assur. Co.* v. *Atlas Ins. Co.* (1908), 138 Iowa 228, 112 N. W. 232, 15 L. R. A. (N. S.) 625. See, also *McLean* v. *Fleming* (1877), 96 U. S. 245, 24 L. Ed. 824; *Schmidt* v. *Brieg* (1893), 100 Cal. 672, 35 Pac. 623, 22 L. R. A. 790; *California Fig Syrup Co.* v. *Improved Fig Syrup Co.* (1892), 51 Fed. 296; *Wirtz* v. *Eagle Bottling Co.* (1892), 50 N. J. Eq. 164, 24 Atl. 658.

The use of a similar name under such circumstances as to show an intention to deceive the public, and thereby to deprive another of his property, is in fraud of the person whose property is thus despoiled. The fertility of man's invention in devising new schemes of fraud is so great that the courts of equity have declined the hopeless attempt of embracing in formula all varieties of form and color, reserving to themselves the liberty to deal with it under whatever form it may present itself. As new devices of fraud are invented, they will be met by new correctives. Kerr, Fraud and Mistake (2d ed.), 1.

When one is called upon to meet a charge of fraud (and that is the essence of unfair competition), he cannot segre-

gate the various items of evidence which are presented and justify the fraud by his right to do them separately. A man has a right to trade horses, to praise his own horse, to dye the white foot black, to file teeth and to administer remedies for heaves, but it is necessary to exercise these undoubted "rights" with much circumspection, for otherwise, under certain circumstances, they justify, and indeed require, the inference of fraud.

Ordinarily the use of such a name as the one chosen by appellees—"The Anderson Cheese Cutter Company"—could not be restrained. A word indicating the locality of manufacture—as Anderson—may be used by any one who can truthfully do so (*Delaware, etc., Canal Co.* v. *Clark* [1871], 13 Wall. 311, 20 L. Ed. 581; *Elgin Butter Co.* v. *Elgin Creamery Co.* [1895], 155 Ill. 127, 40 N. E. 616; *Telephone Mfg. Co.* v. *Sumter Tel., etc., Co.* [1901], 63 S. C. 313, 41 S. E. 322), unless, by long-continued use by another, such word has gained a secondary meaning (*American, etc., Watch Co.* v. *United States Watch Co.* [1899], 173 Mass. 85, 53 N. E. 141, 43 L. R. A. 826, 73 Am. St. 263; *Pillsbury-Washburn Flour Mills Co.* v. *Eagle, supra; Elgin Nat. Watch Co.* v. *Illinois Watch Case Co.* [1900], 179 U. S. 665, 45 L. Ed. 365, 21 Sup. Ct. 270). One company cannot gain the right to the exclusive use of words such as "cheese cutter," which are merely descriptive of the goods to which they are applied (28 Am. and Eng. Ency. Law [2d ed.], 369); but an exclusive or proprietary right in words is not necessary to obtain an injunction against unfair competition in trade by the deceptive use of such words: *Pillsbury-Washburn Flour Mills Co.* v. *Eagle, supra.*

In the last case cited it is said, quoting from *Kinney* v. *Basch* (1877), 16 Am. Law Reg. (N. S.) 596: "It has been urged upon the part of the defendants that geographical names cannot be the subject of a trade-mark; neither can numerals, which only serve to indicate the nature, kind and qual-

ity of an article. It is true that the cases cited by defendants sustain these propositions, but the later cases have proceeded upon different and more equitable principles in defining the grounds upon which courts of equity interfere in cases of this description. This interference, instead of being founded upon the theory of protection to the owners' trade-marks, is now supported mainly to prevent frauds upon the public. If the use of any words, numerals or symbols is adopted for the purpose of defrauding the public, the courts will interfere, and to protect the public from such fraudulent intent, even though the person asking the intervention of the court may not have the exclusive right to the use of these words, numerals or symbols. This doctrine is fully supported by the latest English cases.''

A review of cases in which a similar contention to that of appellees was made is contained in *Pillsbury-Washburn Flour Mills Co.* v. *Eagle, supra,* and it does not seem necessary to do more than cite that case.

A petitioner trading as ''Merchants' Detective Association'' sought to restrain the use by respondents of the name ''Detective Mercantile Agency,'' as being an infringement of his trade-name. Both parties were located on the same street near each other, and were engaged in the same business. It appeared that respondents by various means, were fraudulently seeking to deceive the public into believing that they were the petitioner, and had adopted his name, the better to enable them to carry out that purpose. The name adopted by respondents designated the business in which they were engaged, and in which any one else could engage, and it was therefore no legal infringement of the petitioner's name, since no one can exclusively appropriate a generic word of that character; but the court nevertheless reversed the decree of the lower court, sustaining a demurrer to the petitioner's bill, holding that a fraudulent purpose in adopting the name, coupled with illegal practices calculated to deceive the public into mistaking respondent's place of business for

petitioner's, was sufficient ground to warrant equitable relief. *Merchants Detective Assn.* v. *Detective Mercantile Agency* (1887), 25 Ill. App. 250. The similar location gave virulency to that which in itself was harmless. Many illustrative cases will be found in the monographic note to *Atlas Assur. Co.* v. *Atlas Ins. Co.* (1908), 15 L. R. A. (N. S.) 625.

It is to the public interest that letters mailed to one person shall not be appropriated by another. The person whose valuable mail is thus diverted has a right to complain.

7. To divert an order for goods thus forwarded is quite as reprehensible as to invite an intending purchaser into the wrong store. One who takes the property of another by art and device must have a clear and undoubted legal defense when he comes to a court of conscience. The chancellor's inquiry goes to honesty of conduct. If appellees have conducted themselves as honest men no injunction lies. The evidence needs to be heard to determine the fact.

The complaint on its face shows cause for relief, and the judgment is therefore reversed.

Watson, C. J., Myers and Hadley, JJ., concur.


## DISSENTING OPINION.

COMSTOCK, P. J.—The allegations of the complaint characterize the acts of appellees as fraudulent, but there are no direct allegations of facts sufficient to constitute fraud. It must be presumed, in the absence of any averment of fact to the contrary, that the appellees have the right to manufacture the cheese cutter in question, and at Anderson.

A trade-mark must have some physical connection with the goods, so that the mark goes with the goods into the market. The same rule applies to trade-names. *Jay* v. *Ladler* (1888), 40 Ch. Div. 649; *Singer Mfg. Co.* v. *Wilson* (1876), 2 Ch. Div. 434; *Hazelton Boiler Co.* v. *Hazelton Tripod Boiler Co.* (1892), 142 Ill. 494; *Moxley Co.* v. *Braun & Fitts Co.* (1900), 93 Ill. App. 183; *St. Louis Piano Mfg. Co.*

v. *Merkel* (1876), 1 Mo. App. 305; *Oakes* v. *St. Louis Candy Co.* (1898), 146 Mo. 391, 48 S. W. 467; 28 Am. and Eng. Ency. Law (2d ed.), 351, 352.

"It is a fundamental rule that terms merely descriptive of the goods or business to which they are applied cannot be exclusively appropriated as trade-marks or trade-names." 28 Am. and Eng. Ency. Law (2d ed.), 369.

The same reasons which forbid the exclusive appropriation of generic names, or of those merely descriptive of the article manufactured, which can be employed with truth by other manufacturers, apply with equal force to the appropriation of geographical names designating districts of country. Descriptive terms by long use may acquire in the minds of the public a secondary significance, and come to mean the goods of that particular person. In such cases others cannot use them in such manner as to state a falsehood in their secondary sense.

The word "computing" is the descriptive term used by appellant. It is not used by appellees. If it were, it, being only descriptive, could not be appropriated by one to his exclusive use.

An arbitrary name used by a party to designate the name of an article may be protected. The term "computing" is not arbitrary. Both appellant's and appellees' machines are so designated that any one can easily learn by whom they are made. The term "cheese cutter," used by a particular person or corporation, cannot be so used to the exclusion of other manufacturers.

It appears that appellant and appellees are engaged in the manufacture of cheese cutters in Anderson, Indiana. Appellees use the name "Anderson" in their trade-name, the other does not. Appellees, in the use of the geographical name "Anderson," not used in a fanciful sense, invade no right of appellant. *United States* v. *Roche* (1879), 1 McCrary (U. S.) 385; *Globe-Wernicke Co.* v. *Brown* (1903), 121 Fed 185; *Computing Scale Co.* v. *Standard, etc., Scale Co.*

(1902), 118 Fed. 965, 55 C. C. A. 459; *Sterling Remedy Co.* v. *Gorey* (1901), 110 Fed. 372; *Hostetter Co.* v. *Martinoni* (1901), 110 Fed. 524; *Shaver* v. *Heller & Merz Co.* (1901), 108 Fed. 821, 48 C. C. A. 48, 65 L. R. A. 878; *Wells & Richardson Co.* v. *Siegel, Cooper & Co.* (1900), 106 Fed. 77; *Hansen* v. *Siegel, Cooper & Co.* (1900), 106 Fed. 691; *Williams* v. *Mitchell* (1901), 106 Fed. 168, 45 C. C. A. 265; *Fuller* v. *Huff* (1900), 104 Fed. 141, 43 C. C. A. 453, 51 L. R. A. 332; *Searle & Hereth Co.* v. *Warner* (1902), 112 Fed. 674, 50 C. C. A. 321; *Dadirrian* v. *Yacubian* (1900), 98 Fed. 872, 39 C. C. A. 321; 28 Am. and Eng. Ency. Law (2d ed.), 371.

The trade-mark or trade-name must, either by itself or by association, point distinctively to the origin or ownership of the article to which it is applied. No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected, for competition would be destroyed. *Delaware, etc., Canal Co.* v. *Clark* (1871), 13 Wall. 311, 323, 20 L. Ed. 581.

That persons, not knowing the true name of appellant corporation, address it by an entirely different name—the name selected by appellees—cannot deprive appellees of the right to use the name it has assumed. It is only where the adoption or imitation of what is claimed to be a trade-mark or trade-name amounts to a false representation, express or implied, that there is any room for relief against such use.

It was said in *Delaware, etc., Canal Co.* v. *Clark, supra,* at page 327: "True it may be that the use by a second producer, in describing truthfully his product, of a name or a combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the product, but if it is just as true in its application to his goods as it is to those of another who first applied it, and who therefore claims an exclusive right to use it, there is no legal or moral wrong done. Purchasers

may be mistaken, but they are not deceived by false representation, and equity will not enjoin against telling the truth.''

Eliminating the conclusions of the pleader, recitals and characterizations, fraud, misrepresentation and deceit of the public are not directly charged. It appears only that appellee corporation, under the name of ''The Anderson Cheese Cutter Company,'' is engaged in the manufacture, at Anderson, Indiana, of a cheese cutter. Fraud cannot be predicated upon acts which the party charged has the right by law to do, whatever may be his motive, design or purpose. *Franklin Ins. Co.* v. *Humphrey* (1879), 65 Ind. 549, 560, 32 Am. Rep. 78; *Coppage* v. *Gregg* (1891), 127 Ind. 359, 362.

. The words ''cheese cutter'' are a generic term. The word ''Anderson'' is a geographical term. No one is entitled, in the absence of fraud, to the exclusive use of either. The right to make, and, without fraud, to sell the machine cannot be questioned. If appellees have the right to carry on the business, they have the same right as appellant, under like circumstances, to receive through the United States mails letters or orders which they have reason to believe are intended for them. The court could not determine in advance for whom a letter or order is intended, when it is not correctly addressed to the person by whom it may be claimed.

The judgment should be affirmed.

Rabb, J., concurs in dissenting opinion.