OAKES, *Appellant*, v. ST. LOUIS CANDY COMPANY *et al.*

Division Two, December 6, 1898.

1. **Trade Marks:** OFFICE: WHEN VIOLATED. Unless a trade-mark distinctly points out the origin or ownership of the article, neither the person who has adopted the mark or device can be injured by its appropriation by others, nor can the public be deceived.

2. ———: CANDY: "WHAT IS IT?" Plaintiff in the making of candy accidentally discovered a new kind of confection, and named it, "What Is It?" *Held*, that this amounted to nothing more than a designation of the article itself, and did not point out its origin or ownership.

3. ———: ———: ———: NAME ATTACHED. Unless the name chosen for an article is in some manner attached or affixed thereto or stamped thereon, the name is not a trade-mark, and the maker of the article has no trade-mark rights thereto.

4. ———: ———: ———: NOT EXCLUSIVE. No manufacturer can now claim an exclusive use of the words "What Is It?" to describe an article manufactured by him. That phrase has long been in common use to designate a nondescript animal or thing.

5 ———: RECORDING. The recording of a claim to a trade-mark has no effect to make it a trade-mark unless it is such already.

6. ———: TWO SIMILAR NAMES: UNFAIR COMPETITION. One manufacturer named Oakes accidentally discovered a method of making a new confection, and placed it in his show window for sale, placing thereover a placard "What Is It?" He did not stamp this phrase or name on the candy or in any wise attach it thereto when selling it to others. Another manufacturer in the same city made a similar candy, and sold it at his place of business as "Hawthorne's What Is It?" but at no time attempted to sell it as the manufacture of Oakes. *Held*, that Oakes had no trade-mark, and that there was no element of fraud or unfair competition on the part of the other manufacturer.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Jas. P. Kerr* and *Thos. J. Eppes* for appellant.

(1) The finding and judgment of the court should have been for the plaintiff. An injunction should have been granted. *Sanders v. Jacob,* 20 Mo. App. 96; *St. Louis Carb. Mfg. Co. v. Eclipse Carb. Co.,* 58 Mo. App. 411; *Am. Brew. Co. v. St. Louis Brew. Co.,* 47 Mo. App. 14; *Trask v. Wooster,* 28 Mo. App. 408; *Filley v. Fassett,* 44 Mo. 168; *Liggett-Meyers Tobacco Co. v. Sam Reed Tobacco Co.,* 104 Mo. 153; *Carson v. Ury,* 39 Fed. Rep. 777; *Weener v. Brayton,* 152 Mass. 101; *Union v. Conbain,* 51 Minn. 243. (2) The use of the collection of words "What Is It" was fraudulent. An action for deceit was properly brought. *McCann v. Anthony,* 21 Mo. App. 83; *Drummond Tobacco Co. v. Addison Tinsley,* 52 Mo. App. 10; *Conrad v. Uhrig Brew. Co.,* 8 Mo. App. 277; *Gamble v. Stevenson,* 10 Mo. App. 581. (3) There was here such an appropriation by the defendant of the mark, symbol or device of plaintiff, as will enable the latter to maintain an action against the former for violation of trade-mark. *Croft v. Day,* 2 Beav. 84; *Popphaus v. Wilcox,* 14 Abb. Pr. (N. S.) 206; *Sope v. Geisendorf,* 1 Wils. (Ind.) 60; *Filley v. Fassett,* 44 Mo. 168; *Brown v. Mercer,* 37 N. Y. Sup. Ct. 265; Browne on Trade-Marks, secs. 385, 386; *McCann v. Anthony,* 21 Mo. App. 90; *Drummond Tobacco Co. v. Tinsley Tobacco Co.,* 52 Mo. App. 10.

*E. T.* and *C. B. Allen* for respondents.

(1) Plaintiff having designated the candy by this "name," the plaintiff precluded himself from objecting to others using the same name to describe it. *Liggett & Meyers Tobacco Co. v. Reid,* 104 Mo. 53; *Fetridge v. Wells,* 13 How. Pr. 38; *Leonard v. Wells,* 26 Ch. Div. 258; *Thornton v. Crowley,* 47 N. Y. Sup. Ct.

527; *Colgan v. Danheiser*, 35 Fed. Rep. 150; *Hostetter v. Fries*, 17 Fed. Rep. 62. (2) The collocation of words, "Oakes' What Is It?" or "What Is It?" is not the subject of a trade-mark and was not used as a trade-mark by plaintiff. *Piano Co. v. Merkle*, 1 Mo. App. 305; *Laurence v. Mfg. Co.*, 138 U. S. 546; Browne on Trade-Marks, sec. 500; *U. S. v. Braun*, 39 Fed. Rep. 775; *State v. Berlinsheemer*, 62 Mo. App. 168; *State v. Bishop*, 128 Mo. 373. (3) The use of the display card "Hawthorne's What Is It?" by defendant Wamsganz did not infringe the alleged trade-mark of plaintiff, nor did it constitute unfair competition on his part. *Kehlor v. Breshore*, 59 Fed. Rep. 547; *St. Louis Carbonating Co. v. Co.*, 58 Mo. App. 411; *Mfg. Co. v. Trainer*, 101 U. S. 56; *Goodyear v. Goodyear*, 128 U. S. 602.

GANTT, P. J.—This is an appeal from a judgment of the circuit court of the city of St. Louis.

The action was one *first* to restrain defendants from selling or offering for sale or advertising a confection or candy in the similitude, likeness, or bearing a resemblance to a confection manufactured and sold by plaintiff under the name of "What Is It?" *Second*, for $10,000 damages for the alleged piracy of said name by defendants.

The circuit court found the issues for defendants on both counts and dismissed the petition. Plaintiff appeals.

The following finding of the facts by his honor, Judge JACOB KLEIN, is fully borne out by the record.

"The facts shown in evidence are these: The plaintiff's confectioner, intending to make a certain kind of nut candy, found that a particular lot did not turn out just as was intended; as the lot was a considerable quantity, the plaintiff suggested to him to let

the mixture cool and they would see what it would look and taste like.

"It proved to be curious in appearance but palatable in taste, different from anything they had previously made, and was brought into plaintiff's salesroom and offered for sale, some being placed in the show-windows and some upon the counter. It being different from any candy or confection previously made, plaintiff put upon it a piece of paper with the words, 'What Is It?' And afterwards had ordinary show-cards printed with these words, and put the show-cards in other lots of the same kind of candy made by him. This happened in the autumn of 1889.

"On the fourteenth of November, 1889, the plaintiff and his wife undertook to formally adopt the interrogated phrase 'What Is It?' as a trade-mark, by which to make known and designate the articles of commerce aforesaid (referring to this particular sort of confection) 'as of their manufacture and production.' A formal document to this effect was recorded by the plaintiff and his wife, on November 16, 1889, in the recorder's office, and from that time on plaintiff continued to manufacture the same kind or similar candy, and to expose the same for sale in his store in the same manner. *The term 'What Is It?' was never impressed upon any part of the candy itself, nor was this put in any particular kind of package or labeled in any such way when sold to customers.* But the show-cards with these words were used upon the lots of the candy exposed for sale on the counters or in the show-windows.

"In March, 1895, the defendant Gustav Wamsganz, conducting a candy shop under the name of 'Hawthorne's,' ordered a lot of similar candy to be made by the defendant St. Louis Candy Company, and exposed it for sale and sold it in his shop under

the designation 'Hawthorne's What Is It?'  The total amount shown to have been sold was three different lots, aggregating 77 pounds.  This suit was commenced April 3, 1895, and was tried and submitted November 20, 1895.

"In the determination of this case, it is to be borne in mind that plaintiff does not possess the exclusive right to manufacture or sell the particular kind of candy or confection in controversy.  He has no patent upon the process of manufacturing it, nor upon the manufactured article when produced.  His sole contention is that he has acquired the exclusive right to use the collection of words, or interrogative phrase, 'What Is It?' to designate it as a name therefor, or as a trade-mark or trade-name first adopted by him in connection therewith.  Nor does he claim that the candy sold by the defendant is the same as the plaintiff's, although he claims that it is made in similitude thereof. The plaintiff's own proof shows that the defendant St. Louis Candy Company, never used the name at all, and that the defendant Wamsganz, never palmed off his candy as made by the plaintiff.  On the contrary the defendant Wamsganz designated and sold his candy as 'Hawthorne's What Is It?' in precisely the same way as plaintiff sold his 'Oakes' What Is It?'

"Under these circumstances is the plaintiff entitled to any judgment upon either of the two counts in his petition?

"1.  The first count is for $10,000 damages, and is based upon the charge that the defendants made and offered for sale large quantities of the confection 'in imitation of the confection prepared and sold by plaintiff,' and that they did offer and cause the same to be sold under the name of 'What Is It?' and did cause a placard with these words to be set up in their place of business 'in order to denote that such confection

was the genuine confection known and designated, prepared, vended and sold by the plaintiff, and in violation of the rights of plaintiff in their said trademark.' Stripped of its verbiage, the count charges the defendant with fraudulently palming off· on the public, under a trade-mark which plaintiff has acquired, goods made by defendants as if they were of the plaintiff's manufacture; that this is done maliciously and for the purpose of depriving the plaintiff of his trade.

"2. The second count is for an injunction to restrain defendant 'from selling or offering for sale, or advertising a confection in the similitude, likeness, or bearing a resemblance to the confection of the plaintiff, under or by the name of 'What Is It?'

"As to the defendant, the St. Louis Candy Company, no case whatever is made out upon either count of the petition, there being no evidence that it has ever used the words 'What Is It?' in connection with the candy made by it. Hence, there must be judgment for that defendant, on both counts of the petition.

"As to the defendant, Wamsganz, the case depends in its final analysis upon the question whether the plaintiff has the exclusive right to use the collocation of words, 'What Is It?' either as a distinctive name for candy of the character described, or as a tradename or trade-mark to designate the true origin or ownership of the article manufactured by the plaintiff."

I. This court in *Liggett & Meyers Tobacco Co. v. Sam Reid Tobacco Co.*, 104 Mo. *loc. cit.* 60, said: "The general principles of law concerning trade-marks are well settled. A person has a right to the exclusive use of marks, forms or symbols, appropriated by him for the purpose of pointing out the true origin or ownership of the article manufactured by him. The limitation upon this right is that such designs or words may not be used for the simple purpose of naming or

describing the quality of the goods; for to permit that would be to foster a monopoly, while the great purpose of the law of trade-marks is to protect the owner in the exclusive use of his device which distinguishes his product from other similar articles."

The office of a trade-mark is to point out distinctly the origin or ownership of the article and unless it does so indicate the ownership or origin, neither the person who has adopted the mark or device can be injured by its appropriation by others, nor can the public be deceived. *Canal Co. v. Clark*, 13 Wall. 311.

Keeping in view "the limitation" announced by this court in *Tobacco Co. v. Tobacco Co.*, 104 Mo. 53, it will be observed that plaintiff having accidentally discovered a new kind of confection named it "What Is It?" Can it be questioned that under the facts of this case this action of plaintiff amounted to nothing more than a designation of the article itself, instead of a definite designation of the origin or ownership thereof.

As well said by Judge Duer in *Fetridge v. Wells*, 13 Howard's Prac. *loc. cit.* 387. "When a new preparation or compound is offered for sale, a distinctive and specific name must necessarily be given to it. The name thus given to it, no matter when or by whom imposed, becomes by use its proper appellation and passes as such in our common language. Hence, all who have an equal right to manufacture and sell the article, have an equal right to designate and sell it by its appropriate name, the name by which it alone is distinguished and known, *provided* each person is careful to sell the article as prepared and manufactured by himself and not by another. When this caution is used, there is no deception of which a rival manufacturer by whom the distinctive name was first ·invented or adopted can justly complain. . . . In short, an exclusive right to use on a label or other trade-mark the

appropriate name of a manufactured article exists only in those who have an exclusive property in the article itself.''

Now in this case the plaintiff Oakes' having given the name of ''What Is It'' to this peculiar kind of candy he has estopped himself from the exclusive right to the use of that name, and he has no exclusive right to manufacture and sell this particular confection.

The phrase ''What Is It?'' as pointed out by Judge KLEIN has been in common use to designate a nondescript animal or thing ever since the world-renowned showman P. T. Barnum applied it to the supposed wonderful animal which he exhibted by that name. Barnum's Autobiography, p. 323.

While it is generally held that the inventor of an arbitrary name may apply it to an article manufactured by him to distinguish his manufacture from that of others and will be protected in the exclusive use thereof, that doctrine can not avail plaintiff in this case because the phrase ''What Is It'' was in no sense originated by him. It was in common use when he first applied it to his candy, and can not at this late day be made the subject of a trade-mark. Now has he done those things which entitled him to acquire it as a trade-mark if such a thing could be done?

A trade-mark which is not in some manner attached or affixed or stamped on the article indicated by it involves a contradiction in itself, the idea of some distinctive brand or mark being inherent in the expression itself.

An article can only be said to be distinguished by a trade-mark when that mark is connected with, annexed to or stamped, printed, carved or engraved upon the article as it is offered for sale. *St. Louis Piano Co. v. Merkel*, 1 Mo. App. 305; Browne on Trade-Marks, sec. 311; *Rowley v. Houghton*, 2 Brewster, 303; *Candee,*

*Swan & Co. v. Deere & Co.*, 54 Ill. 439; *Lawrence Mfg. Co. v. Tenn. Mfg. Co.*, 138 U. S. 537.

The conceded facts show that plaintiff never attached, or stamped this device "What Is It" upon the candy itself, consequently when it left his store there was nothing to indicate to purchasers or the trade the origin of this particular confection. It was only in plaintiff's own store that he attempted to distinguish his candy from similar goods of other manufacturers of candy by a display card in his show cases and windows.

Obviously under these circumstances this so-called trade-mark gave no currency to his wares and added nothing to the value of his goods.

The recording of the claim had no effect whatever in giving it the quality of a trade-mark if it was not already such according to the principles of law governing this subject. *U. S. v. Braun*, 39 Fed. Rep. 775.

It remains only to be seen whether the views hereinbefore expressed collide with the opinion of this court in *State v. Bishop*, 128 Mo. 373. We think most clearly not. That was a criminal prosecution of a defendant for violation of an act of the General Assembly of this State (Laws, 1893, p. 260) prohibiting the unauthorized use of a label adopted by a union of cigar makers and furnished to cigar manufacturers employing union men only and making a violation of said act a misdemeanor.

One of the contentions in that case was that the cigar maker's label was not a trade-mark in its proper legal sense and the opinion concedes that but sustains the constitutionality of the statute, holding that the statute not only protected a technical trade-mark but any other insignia, label or symbol, which may be or has been adopted by any association or union of workingmen as a trade-mark.

No such question is involved in this record and there is nothing in that case that intimates that the essential requirement of a trade-mark, viz., that it be attached, affixed, stamped or engraved upon the article itself can be dispensed with, and the views herein expressed do not militate with that decision.

Finally we agree with the learned circuit judge that the case presented is devoid of any element of fraud showing unfair competition. The St. Louis Candy Company never used the name at all and defendant Wamsganz never at any time palmed off his candy as the manufacture of plaintiff. He sold it as "Hawthorne's What Is It" and not as "Oakes' What Is It," and this he had a perfect right to do.

In *Lawrence Manufacturing Co. v. Tennessee Manufacturing Co.*, 138 U. S. 546, quoting from *Canal Co. v. Clark*, 13 Wall. 322, it was said:

"In all cases where rights to exclusive use of a trade-mark are invaded, it is invariably held that the essence of the wrong consists in the sale of goods of one manufacturer or vendor as those of another; and that it is only when this false representation is directly or indirectly made that the party who appealed to a court of equity can have relief. This is the doctrine of all the authorities. Hence, the trade-mark must either by itself, or by association, point distinctively to the origin or ownership of the article to which it is applied. The reason of this is that unless it does, neither can he, who first adopted it be injured by any appropriation or imitation of it by others, nor can the public be deceived."

Tested by this rule no wrong legal or moral has been done to plaintiff by the defendants and the circuit court correctly dismissed the bill.

The judgment is in all things affirmed.

SHERWOOD and BURGESS, JJ., concur.