## DIEDERICH v. W. SCHNEIDER WHOLESALE WINE & LIQUOR CO.

(Circuit Court of Appeals, Eighth Circuit.   March 22, 1912.)

No. 3,628.

1. TRADE-MARKS AND TRADE-NAMES (§ 15*)—NATURE OF TRADE-MARKS—STAT-
     UTES—"SIGN."

Under Act Feb. 20, 1905, c. 592, §§ 1, 16, 33 Stat. 724, 728 (U. S. Comp. St. Supp. 1909, pp. 1275, 1283), authorizing the registration of trade-marks by filing an application specifying the merchandise to which the trade-mark is appropriated, a description of the trade-mark, and a statement of the mode in which the same is applied and affixed to goods, and authorizing an action for the wrongful use of a trade-mark by the use of signs, labels, etc., intended to be used in connection with the sale of merchandise, a trade-mark is only valid when actually affixed to a commodity, and one may not acquire a trade-mark in a sign placed on a building, the word "sign" being used to indicate a mark, symbol, token or emblem affixed to the article sold.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 18; Dec. Dig. § 15.*

For other definitions, see Words and Phrases, vol. 7, pp. 6508–6512.]

2. TRADE-MARKS AND TRADE-NAMES (§ 53*)—INFRINGEMENT—NATURE OF IN-
     JURY.

What is not and cannot be a trade-mark cannot be infringed as a trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 61; Dec. Dig. § 53.*]

3. COURTS (§ 300*)—FEDERAL COURTS—UNFAIR COMPETITION—JURISDICTION—
     CITIZENSHIP.

Where the parties are citizens of the same state, the federal courts have no jurisdiction to determine the question of unfair trade in a suit brought by one against the other.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 300.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Action by the W. Schneider Wholesale Wine & Liquor Company against August Diederich.   From an order granting a temporary injunction, defendant appeals.   Reversed.

James A. Carr (Charles F. Krone, on the brief), for appellant.
James L. Hopkins (Alphonso Howe, on the brief), for appellee.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before SANBORN and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

W. H. MUNGER, District Judge. This suit was brought by appellee, as complainant, to enjoin the infringement of a trade-mark. From the granting of a temporary order of injunction, Diederich, the defendant, has appealed to this court.

It appears that the Schneider Wholesale Wine & Liquor Company has a registered trade-mark, consisting of the arbitrary numbers "905," applied to whiskies;' that the defendant, who was formerly a stockholder and officer in the Schneider Company, having disposed of his interest therein, engaged in the saloon business by himself, and placed upon the front of his saloon, or saloons, the following signs:

"A. Diederich,
The Originator of
905."

"Kay-Dee-Liquor Co.
A. Diederich
The Originator
of 905
Mgr."

"A. Diederich,
905
The Originator of"

The bill contained an allegation as follows:

"That the defendant is engaged in interstate commerce, and has sold and shipped merchandise, sold by him by reason of said deceptive use of your orator's trade-mark, to customers residing in the state of Illinois and elsewhere."

This allegation does not allege that the merchandise which he sold to customers residing in the state of Illinois had placed thereon, or upon the wrapper, or in any way connected with such merchandise, the trade-mark "905," and there is nothing in the proofs to that effect.

In what are designated as the "Trade-Mark Cases," 100 U. S. 82, 25 L. Ed. 550, it was held that Congress only possessed power to grant a trade-mark for use in commerce among the states, foreign nations and Indian tribes.

[1] The act of 1905 (33 Stat. 724), first section, is in part as follows:

"That the owner of a trade-mark used in commerce with foreign nations, or among the several states, or with Indian tribes, provided such owner shall be domiciled within the territory of the United States, or resides in or is located in any foreign country which, by treaty, convention or law, affords similar privileges to the citizens of the United States, may obtain registration of such trade-mark by complying with the following requirements: First, by filing in the Patent Office an application therefor in writing, addressed to the Commissioner of Patents, signed by the applicant, specifying his name, domicile, location and citizenship, the class of merchandise and the particular description of goods comprised in such class to which the trade-mark is appropriated; a description of the trade-mark itself, and a statement of the mode in which the same is applied and affixed to goods," etc.

It will be observed that this section contemplates that the trade-mark is to be affixed to the goods which are used in the commerce specified, as it requires the applicant in his application for a trade-mark, to give not only a description of the trade-mark itself but "a statement of the mode in which the same is applied and affixed to goods."

Section 16 of the enactment provides:

"Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy or colorably imitate any such trade-mark and affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration, or to labels, signs, prints, packages, wrappers, or receptacles intended to be used upon or in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in such registration, and shall use, or shall have used, such reproduction, counterfeit, copy; or colorable imitation in commerce among the several states, or with a foreign nation, or with the Indian tribes, shall be liable to an action for damages therefor at the suit of the owner thereof," etc.

Complainant bases its right to an injunction upon the fact that the signs above mentioned, placed upon the buildings in which he conducted his saloons, were an infringement of its trade-mark. The inquiry then naturally presents itself whether complainant has a trade-mark in a sign placed upon a building, simply indicating that goods of a certain character were sold at that place.

In 28 Am. & Eng. Enc. of Law (2d Ed.) p. 352, it is said:

"It is essential to the validity of a trade-mark as such that there shall be some actual, physical connection between the goods and the mark, so that the mark goes with the goods into the market. Words, marks, or symbols, used in advertisements, circulars, and other similar ways, but not actually affixed to the goods, are not valid, technical trade-marks. It is sufficient if the mark is affixed either upon the goods themselves or upon the box or wrapper containing them, or in some other way physically attached to the goods. Words not actually affixed to the goods frequently constitute trade-names, and are protected as such against unfair competition."

In Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., 142 Ill. 494, 30 N. E. 339, it was said:

"A trade-mark owes its existence to the fact that it is actually affixed to a vendable commodity."

In Oakes v. St. Louis Candy Co., 146 Mo. 391, 48 S. W. 467, it is said:

"A trade-mark which is not in some manner attached or affixed or stamped on the article indicated by it involves a contradiction in itself, the idea of some distinctive brand or mark being inherent in the expression itself. An article can only be said to be distinguished by a trade-mark when that mark is connected with, annexed to, or stamped, printed, carved, or engraved upon, the article as it is offered for sale."

In Lawrence Mfg. Co. v. Tenn. Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997, it was held that a trade-mark, to be valid, must be such as to indicate origin, manufacture or ownership; that, if used to denote simply class, grade, style, or quality of the articles, it could not be upheld as technically a trade-mark. Macmahan Pharmacal Co. v. Denver Chemical Mfg. Co., 113 Fed. 468, 51 C. C. A. 302.

And in Ryder v. Holt, 128 U. S. 525, 9 Sup. Ct. 145, 32 L. Ed. 529, it was held that, in a case where the bill did not allege that the trade-mark was used on goods intended to be transported to a foreign country, the federal court had no jurisdiction.

We think it clear, from the foregoing authorities, that a trade-mark is only valid when attached to the article or wrapper, or in some manner physically connected with the article itself. Such being the case, it is very clear that complainant could have no trade-mark in a sign, placed upon a building, containing the figures "905," and if complainant had no trade-mark in such a sign upon a building, because the validity of the trade-mark owes its existence to the fact that it is in some manner attached to the article of commerce itself, we are unable to perceive how it can be said that such a sign placed by defendant upon the building in which he transacted his business was an infringement of complainant's trade-mark.

[2] It is a self-evident proposition that what is not and cannot be a trade-mark is not and cannot be infringed as a trade-mark.

It is true that the foregoing authorities were decided during the existence of the act of March 3, 1881 (Act March 3, 1881, c. 138, 21 Stat. 502 [U. S. Comp. St. 1901, p. 3401]), but the first section of that act is in substantially the same language as the act of 1905. It requires an applicant to file in the Patent Office "a statement of the mode in which the same is applied and affixed to goods."

Section 16 of the act of 1905, above quoted, is somewhat broader than section 7 of the act of March 3, 1881, relating to the same matter, in that the act of 1905 renders a person liable who affixes such registered trade-mark, without the consent of the owner, to labels, signs, prints, packages, wrappers, or receptacles intended to be used upon or in connection with the sale of merchandise, etc.

Stress is placed, in the argument of counsel, upon the meaning of the word "signs." The word "sign" must be understood to have been used for the purpose of protecting simply what the owner has by virtue of his trade-mark. The word "sign" has various meanings. I find in a copy of the Standard Dictionary before me that the word, when used as a noun, has the following definitions:

"(1) A pantomimic gesture. (2) An inscription or representation to indicate a place of business. (3) An arbitrary mark; symbol. (4) A token; emblem."

As complainant acquired a right to the trade-mark only as it was affixed in some manner to the article which it sold in commerce among the states, foreign countries, and Indian tribes, it is evident that the term "sign" was used to indicate a mark, symbol, token, or emblem, which was affixed in some manner to the article sold.

[3] It is quite probable that complainant states, in its bill, a cause of action against defendant for unfair trade. That question, however, we cannot pass upon. The parties being citizens of the same state, the court below had no jurisdiction to determine that question. Hutchinson, Pierce & Co. v. Loewy, 217 U. S. 457, 30 Sup. Ct. 613, 54 L. Ed. 838.

As the alleged act of defendant was no infringement upon complainant's trade-mark, the order granting an injunction was erroneous, and is consequently reversed.

SANBORN, Circuit Judge (dissenting). The sale on which this injunction is founded was made in Missouri under a contract to deliver the whisky in Illinois, the whisky was so delivered pursuant to the contract, and the sale was induced by the defendant's use on a sign and print upon the front wall of his dramshop in which the sale was made, of the plaintiff's trade-mark "905," which had been recorded under Act Feb. 20, 1905, 33 Stat. c. 592, §§ 1, 16, pp. 724. 728. This sale and delivery constituted interstate commerce, the plaintiff's trade-mark which induced it was used in commerce among the states, and the case falls within the literal terms of the act of Congress. Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; Butler Bros. Shoe Company v. United States Rubber Co., 156 Fed. 1, 8, 84 C. C. A. 167, 174, and cases there cited. There can be no doubt that this use of the plaintiff's mark by the defendant constituted unfair and unlawful trade as the majority suggest, and it seems to me that it also presented a cause of action for an infringement of the plaintiff's trade-mark under the act of 1905.

The question here is not whether or not it was essential to the validity of the plaintiff's arbitrary distinctive trade-mark "905" that the plaintiff should have affixed this mark to and should have used it upon merchandise, but it is whether or not after it had so affixed it, used it, secured it, and registered it the defendant infringed that trade-mark by placing it upon the front wall of his dramshop for the purpose of inducing purchasers to buy his whisky when in the law the trade-mark and its use were the property of the plaintiff. The complainant averred in its bill that it applied its trade-mark "905" continuously and without interruption "to the packages containing its merchandise by branding, stencilling, or printing the same upon barrels and labels and corks used in packing liquors for sale," and that it also used it upon buildings to mark the places where such whiskies could be obtained. There is no answer in the record to this averment, and it must be taken as true. The provision of the first sections of the acts of 1881 (21 Stat. c. 138, p. 503) and 1905 (33 Stat. 724), cited by the majority, to the effect that the applicant for registration shall file a statement of his trade-mark and "the mode in which the same is applied and affixed to goods" may condition the registration and perhaps the existence of a trade-mark that may be registered, but it in no manner prescribes or limits the acts which constitute the infringement of such a trade-mark after it has been secured and established. Those acts are prescribed and determined by other sections of the acts of Congress, by section 7 of the act of 1881 and section 16 of the act of 1905. The record in this case, therefore, as the writer understands it, conclusively shows that the plaintiff had a trade-mark in the arbitrary symbol "905" which it had applied to merchandise used in interstate commerce and reg-

istered, and which it had also used on buildings in which it sold its merchandise. Let us now turn to the real question in the case, to which it seems to me the requirement of the first sections of the acts to the effect that the applicant for registration shall state the mode in which his trade-mark is applied or affixed to goods is immaterial. That question is, Does the use of a trade-mark by another than the owner on the front wall of a dramshop, or elsewhere, without affixing it to the merchandise sold or to the packages which contain it raise a cause of action in favor of the owner under the act of February 20, 1905?

There can be doubt that Congress had the power to give such a cause of action. Nor can there be any doubt that such a use of a counterfeit of a recorded trade-mark to sell the counterfeiter's goods for those of the owner of the trade-mark as completely contravenes the purpose of the act as the use of the counterfeit on the packages which go with the goods to the purchaser. When the Congress enacted the legislation now in question, it was not without experience in the operation of a similar act. It had provided by Act March 3, 1881, 21 Stat. c. 138, § 7, p. 503, for the registration of such trade-marks, and that:

"Any person who shall reproduce, counterfeit, copy or colorably imitate any trade-mark registered under this act and affix the same to merchandise of substantially the same descriptive properties as those described in the registration, shall be liable on the case for damages for the wrongful use of said trade-mark at the suit of the owner thereof."

After the enactment of this statute the courts held in the cases cited by the majority that, in order to constitute an infringement, the trade-mark of the owner must be affixed to the goods or to the packages of the alleged infringer which went with them to the purchasers. Subsequent to all these decisions Congress passed the act of 1905, and, after providing therein for the registration of a trademark by the owner in substantially the same words as in the act of 1881, it enacted that:

"Any person who shall without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark and affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration, *or to labels, signs, prints, packages, wrappers, or receptacles intended to be used upon or in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in such registration,* and shall use, or shall have used, such reproduction, counterfeit, copy, or colorable imitation, * * * in commerce among the several states, or with a foreign nation, or with the Indian tribes, shall be liable to an action for damages therefor at the suit of the owner thereof."

It is indisputable that the words the writer has italicized in the last quotation were added in the act of 1905 to those used in the act of 1881 for the purpose, and that they must, under familiar rules of construction, have the effect to make actionable other uses of counterfeit trade-marks by infringers than their use affixed to goods similar to the goods of the owner. Under the old act, the use of these counterfeit trade-marks by infringers was made actionable only when they affixed them to the goods. Under the act of 1905 their

use affixed to the goods was made actionable by the same words used in the act of 1881, and in addition their use on "labels, signs, prints, packages, wrappers, or receptacles intended to be used upon, or in connection with the sale of, merchandise." Note that not only was the use of such counterfeit trade-marks on labels, signs, prints, packages, wrappers, or receptacles made actionable when they were "intended to be used upon," but also when they were "intended to be used in connection with the sale of" merchandise similar to that of the owner of the trade-mark. A copy of the trade-mark of the plaintiff was by the defendant affixed to, nay, it was a sign and a print. It was intended by him to be used, and it was used by him, in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in the plaintiff's registration. I am of the opinion that such a use fell within the specific terms of the act and that it as effectually defeated the purpose of the act as a use of it by affixing it to specific merchandise would have done.

I agree with the court below that the complainant was entitled to its injunction.