David PERSHA, Appellant,

v.

ARMOUR & COMPANY, Appellee.

No. 16043.

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1957.

———◆———

Al L. Crystal, Houston, Tex., for appellant.

Horace Dawson, Chicago, Ill., Leon Sarpy, New Orleans, La., Chaffe, McCall, Phillips, Burke & Hopkins, New Orleans, La., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from the judgment in a diversity suit in which appellant sought protection and damages for the infringement of his state registered copyright; the court below entered judgment for the appellee, holding that its federal registration of the name Steakees was valid, while appellant's earlier state registration was invalid.

It appears that in 1948 the appellant, David Persha, started to experiment with a new meat product consisting of ground pure beef which with certain additives and preservatives was shaped into the form of a steak and then frozen. Appellant alleges that at that time he was in touch with representatives of the appellee, from whom he purchased the meat for his experiments, and to whom he communicated his plan for selling the new product under the name Steakees. In the spring of 1949 appellant moved to Houston, Texas, where, under some arrangement with the Buick Cafeteria he served his new product to its patrons. The name Steakees was listed on the blackboard menu, and, as testified by some of the witnesses, was also displayed on the steamtable. Somewhat later, in 1950, Steakees were served and listed as such on the menu in the Markou Restaurant in Houston, in whose kitchen appellant was then preparing the product. Appellant then moved most of his operations to a shop on Shepherd Avenue in the same city, where he operated with various partners under several successive and overlapping names as "Hydropo-

nic Gardens," "Persha's Energized Food Products," "Texas Energized Foods," and "Steakees, Incorporated." He alleges that during the latter part of 1950 and the early part of 1951, several sales of Steakees were made both to business and to individual customers, some of whom appeared as witnesses, in which the meat was wrapped in plain paper on which the following legends had been stamped:

Contain Hydrolized
"STEAKEES Protein less than 1/10
of 1% Benzoate of Soda"

"PERSHA ENERGIZED FOOD PRODUCT
Manufacturers of Energized Foods
2636 South Shepherd,    Ja 5228
HOUSTON, TEXAS"

On April 20, 1951, appellant filed an application for a trademark registration with the Texas Secretary of State in which it was alleged that the first sale of the marked product had taken place on February 13, 1951; on April 21st appellant started selling his product in printed paper bags bearing the legend:

"STEAKEES
Trade Mark Reg. Pat Applied for
Steakees, Incorporated, 802 Commerce,
Houston, Texas; Persha's origination."

He subsequently received Trade Mark No. 16,103 for the name Steakees.

In 1948 appellee, a nationwide manufacturer and wholesaler of meat products, commenced selling thinly sliced frozen beef under the name Steakettes. In 1950 it was discovered that this name had already been appropriated by a prior user, and the name Steakees was selected as a substitute by appellee's Chicago office. On September 8, 1950, a registration statement for that name was filed with the United States Patent Office, alleging the first use of that name on August 3, 1950. In November 1950 Steakees appeared on the inventory record of the Houston branch. The first proven Texas sales occurred in 1951: on January 22nd a sale to Mr. O. Dorsa in Dallas, evidenced by an original and a duplicate sales slip (on which, however, only the letters "Steak * * *" were clearly discernible); among several other sales proven by invoice copies there was one on April 12th to the Zero Frozen Food, Inc. of Houston. It was testified that the product in each instance must have been packaged in cartons prominently bearing the printed word Steakees for all of appellee's sales were in such containers. On April 24, 1951, appellee's application for federal registration was rejected because of a registration of the same name in 1933; after proof was presented that the earlier registration had been abandoned appellee, on a renewed application, received U. S. Registration No. 574,192 for the trade-mark Steakees.

■ The first question is whether, as a matter of Texas law, appellant acquired any exclusive rights to the name Steakees through the blackboard listing in the Buick Cafeteria, through the alleged signs on the steamtable there, or through the listings on the menu of the Markou Restaurant. The common-law rule has been well stated in Corpus Juris Secundum:

"In order to become a valid trademark, the name or mark must be in some way physically attached to the goods, and go with them into the market, so as to establish a trademark usage. Use only as a name or sign on a place of business, or in advertisements, circulars, and other similar ways, without being actually affixed to the goods is insufficient to

constitute the marks so used valid trade-marks. It is sufficient, however, if the mark is affixed either on the goods themselves, or on the package or wrapper containing them, or in any other way physically attached to the goods." 87 C.J.S., Trade-marks, etc., § 25; see also 52 Am.Jur., Trademarks, etc., § 6.

This principle appears to be well established by many cases, and, though there appear to have been none pertinent in Texas, there is no indication that Texas common law on this point differs from the general rule. The closest American case in point is Oakes v. St. Louis Candy Co., 146 Mo. 391, 48 S.W. 467, in which it was held that a name printed on a display card placed on a pile of loose candy was not sufficient to establish a trademark. See also, Western Stove Co. v. George D. Roper Corp., D.C.S.D.Cal., 82 F.Supp. 206 (for a detailed discussion of many leading cases on this point); Gray v. Armand Co., 58 App.D.C. 50, 24 F.2d 878; Springfield Fire & Marine Ins. Co. v. Founders' Fire & Marine Ins. Co., D. C.N.D.Cal., 115 F.Supp. 787.

■■ Since appellant is thus precluded from establishing prior trademark use of the name Steakees by his cafeteria and restaurant sales, the question becomes whether appellant or appellee first sold their product in packages marked with the name Steakees. Since this is a question of fact we can reverse the trial court only if its findings are clearly erroneous.[1] The trial court found that the appellee's first pertinent sale was on January 22, 1951, in Dallas, and that in the following months there were several sales in Texas, including one on April 12th in Houston; appellant's first sale in a marked wrapping was found to have been in Houston on April 21st.

First of all, appellant asserts that throughout the fall, winter, and spring of 1950–51 he sold his product in stamped wrappers to individual retail customers; but, as the trial court points out, the testimony on this point is quite vague and, in particular, the dates of the alleged sales are not sufficiently established. Appellant also disputes the sales claimed by the appellee, contending that the January 22nd sale is proven only by a sales slip on which only the letters "Steak * * *" are clear, and as to all the sales the only evidence is the invoice, while the crucial question of the nature of the packaging is disposed of by statements that: "I don't know of any" "boxes, other than in the form of [the] Exhibits * * * in which Steakees have ever been sold by Armour and Co." These points too relate only to the evidence, and while we might arrive at a different conclusion, we cannot say that the trial court, who was in a better position to estimate the credibility of the witnesses, was clearly erroneous.

In view of the somewhat unsatisfactory state of the evidence presented by both parties, it might be asked on whom rested the burden of proof to establish prior sales in marked containers. Normally, of course, it is on the plaintiff, here the appellant. However, registration of a trade-mark in accordance with federal or state law creates a prima facie, rebuttable presumption that the one registering the mark is its owner, and that the trade-mark is valid. Marshall Mfg. Co. v. Verhalen, Tex.Civ.App., 163 S.W.2d 665; 41–A Tex.Jur. § 14, at 431. Here of course both parties have such registration: appellant's Texas registration since April 1951, and appellee's federal registration since May 1953, which, however, is based on an earlier application and an earlier claimed user than appellant's. Even if we assume that this state of affairs relieves appellant from some of his evidentiary burden, it must be pointed out that since he received the Texas registration on the basis of an application in which the first claimed use of the mark was in February 1951 it is hard to see how a registration so obtained can be of any help to the appellant where the court found a use by another as early as January 1951.

1. Fed.Rules Civ.Proc. rule 52, 28 U.S.C.A.

Having approved the holding of the trial court on the above stated grounds, it is not necessary to consider the alternative basis given by that court, that the appellant was barred by certain misrepresentations in the legend accompanying the mark and by certain violations of health ordinances from acquiring any rights to the trade-mark or from receiving any redress for its alleged infringement.

The judgment is affirmed.