PEARL P. COVERT et al., Appellants, v. ISAAC BERNAT et al., Respondents.

### Kansas City Court of Appeals, May 29, 1911.

1. **TRADE-MARKS: Signs: Repairer.** A trade-mark is something attached to or stamped upon goods offered for sale whereby the seller's or manufacturer's reputation is carried along with the goods. Therefore a sign, with name and certain design, over one's place of business, where shoe repairing is done, and a representation of which is not attached to nor impressed upon the work, is not a trademark.

2. **UNFAIR TRADE: Sign: Equitable Relief.** But the deceptive imitation of a sign by a competitor in business, may become what is known as unfair trade, and its use will be restrained by a court of equity. Though where a case is stated for the restraint of the use of a trade-mark, described and alleged to have been adopted and filed with the Secretary of State as a trade-mark, no relief can be granted, in such case, for restraint of unfair competitive methods in trade.

Appeal from Jackson Circuit Court—*Hon. Herman Brumback,* Judge.

AFFIRMED.

*Aleshire & Gundlach* and *Oliver Wroughton* for appellants.

Plaintiffs brought suit against the defendants to enjoin them from using a certain electric illuminat-

Covert v. Bernat.

ing sign, alleging that it was an infringement upon plaintiffs' trade-mark used in different places in Kansas City, and that the two signs were so similar in appearance as to be misleading. The only question to be determined is whether or not under the evidence as presented to the trial court it was shown to be of such similarity as comes within the rule. The courts have laid down the following rule, as we understand it: That to justify an injunction it should appear that the resemblance between the trade marks, or trade names, is sufficiently close to raise a probability of mistake on the part of the public. Sanders v. Jacob, 20 Mo. App. 96; McCann et al. v. Anthony, 21 Mo. App. 83; Brewing Co. v. Brewing Co., 47 Mo. App. 14; Tobacco Co. v. Tobacco Co., 104 Mo. 53.

*Sebree, Conrad & Wendorff* for respondents.

(1) The similarity between plaintiffs' and defendants' signs is not sufficient to deceive or mislead anybody; neither is there any contention, or even any allegation in the petition that any one has ever been deceived or misled by defendants' sign. (2) That a trade-mark can only exist, be of value, or be protected, when it is attached to a particular artice or commodity which is for sale. Oakes v. Candy Co., 146 Mo. 291; Grocers Journal v. Midland Pub. Co., 127 Mo. App. 356; Eggers v. Hinck, 65 Cal. 445. (3) No descriptive or generic word, or words; or word or words indicating class kind, character, quality, quantity, price, ingredients, etc., nor any sign, character, or device equivalent thereto can be protected as a trade-mark. Egger v. Hinck, 63 Cal. 445; Mfg. Co. v. Rubber Co., 128 U. S. 598; Seed Co. v. Plant & Seed Co., 37 Mo. App., 313; Mfg. Co. v. Trainer, 101 U. S. 51; Mfg. Co. v. Mfg. Co., 138 U. S. 537; Fairbanks v. Jacobus, 14 Blatch. 337, 11 F. C. 6107.

ELLISON, J.—Plaintiffs are partners, and under the name of "Smith Shoe Repairing Company" do a general shoe mending business in Kansas City. Defendants are also partners and are engaged in the same business under the name of "Bernat Brothers." Plaintiffs have what they term and claim to be a "trade-mark" which they claim defendants infringed upon by adopting a like device, to the deception of their customers and the hurt of their trade. They therefore instituted this action to restrain defendants from further using such similitude to their trade-mark. The trial court, on hearing the evidence in plaintiffs' behalf, found for defendants and dismissed the bill.

Plaintiffs showed that they conducted their business at four different repair shops in Kansas City, and that they used the following design as a sign at each shop, viz.: "A transparent sign, about three and one-half by seven feet, consisting of glass sides set in a wooden frame and illuminated by an electric light placed within. The field of this sign is painted red and upon it is painted the sole of a shoe, in this shape: the toe and heel of the sole are painted white, and the shank black. Upon the heel is the character '½.' On the shank, in white letters, are the words 'Sewed Soles;' on the toe are the characters '75c' and the words 'Trade-Mark,' and below the picture of the sole is the word 'Mens.' On top part of frame are words 'Old Soles Made New.' On the lower part of the frame are the words 'Smith Shoe Repairing Company,' suspended below which are the words 'Shoes fixed while you wait.' "

Plaintiffs further showed that they filed a copy of the sole of the shoe with words and figures thereon, with the Secretary of State, as their trade-mark. They further showed that afterwards defendants, who are engaged at one place in said city in the same shoe repairing business that plaintiffs are in, are using a sign of the following description: "About three and one-half by five

156 App.—44

feet, consisting of glass sides set in a frame and illumi·
nated from within by an electric light, the field being
painted rod, the sole of a shoe is painted white, and upon
the sole of the shoe, in black letters, are the words:
'Sewed Soles,' below which are the characters '½ 75c,'
on the shank the word 'Mens' and on the heel, 'Heels 25c,'
together with a heel plate on the edge of the heel on
which is written 'Lyon plate.' On the top of the frame
are the words 'Bernat Bros. Shoe Repairing Co.' On
the bottom of the frame are the words 'Repairing while
you wait,' and below are the words 'Hand Sewed ½
Soles $1.25.' "

It does not appear except in a few instances, as here-
inafter stated that defendants used what is called the
trade-mark—the sole of the shoe—or its accompanying
words, letters or figures, on shoes repaired, sold or manu-
factured by them.   In Liggett & Myers Tobacco Co. v.
Reed Tobacco Co., 104 Mo. 53, the Supreme Court said
that: "A person has a right to the exclusive use of marks,
forms or symbols appropriated by him for the purpose
of pointing out the true origin or ownership of the article
manufactured by him.   The limitation upon this right
is that such designs or words may not be used for the
simple purpose of naming or describing the quality of
the goods; for to permit that would be to foster a monop-
oly, while the great purpose of the law of trade-marks
is to protect the owner in the exclusive use of his device
which distinguishes his product from other similar ar-
ticles."

This was quoted and affirmed in Oakes v. Candy
Co., 146 Mo. 391.   An arbitrary name or device may be
adopted as a trade-mark, but its mere adoption will not
suffice to establish a right to it; or a right to prevent
others from using it.   It must be *used* by him who adopts
it, by, in some manner, affixing it to the article manu-
factured or sold. · "A trade-mark which is not in some
manner attached or affixed or stamped on the article in-
dicated by it involves a contradiction in itself, the idea

of some distinctive brand or mark being inherent in the expression itself. An 'article can only be said to be distinguished by a trade-mark when that mark is connected with, annexed to or stamped, printed, carved or engraved upon the article as it is offered for sale." [Oakes v. Candy Co., supra.]

The same ruling is made by the St. Louis Court of Appeals in Grocers Journal v. Midland .Pub. Co., 127 Mo. App. 356. The latter case involved the interesting question whether the name of a newspaper could be a trade-mark, and it was held that it could.

But a sign unattached, or not stamped upon the article offered for sale, cannot constitute a trade-mark.

It did appear, rather incidentally than otherwise, that plaintiff had small "stickers" with a representation of their sign printed thereon which they sometimes pasted on their repair work. But what they sought in their petition was to restrain an imitation of their sign and the evidence was directed to show the resemblance of defendants' sign to theirs; and in the opening of their argument and brief it is stated that the contest is between the two signs as being so similar as to cause mistake of one's place of business for the other's.

.There is a class of wrongs, not like, but closely related to trade-marks, known as unfair trade, or competition, in which relief may be had in appropriate cases.

And this unfairness in trade may consist in signs, advertising and designating places of business if they are so designed as to probably deceive the public. For a deception of any substantial portion of the public world, would, of course, work a hardship and loss on him whose sign is thus so far imitated as to cause such deception. [Paul on Trade-Marks, sec. 223; Browne on Trade-Marks sec. 799; Hopkins Unfair Trade, sec. 15.]

In Cruttwell v. Lye, 17 Ves. Jun. 335 (34 Eng. Reprint, 129), the Chancellor said that there was no doubt equity would interpose to prevent the fraud of "setting up the same trade, in the same place, under the same

sign;" adding, "the party giving himself out as the same person." We think, however, the latter observation would not be a necessary part of a case. Thus, in American Brewing Co. v. St. Louis Brewing Co., 47 Mo. App. 14, a similar sign was used, with no pretense of being the same person or corporation, yet in an interesting opinion by Judge ROMBAUER, it was held that equity would afford relief. So, in Hilson Co. v. Foster, 80 Fed. 896, and Johnson v. Hitchcock, 3 N. Y. Sup. 680, it was held that deceptive advertising by signs or pictures would in proper cases be restrained. The latter case involved the right to imitate a flag which was a real estate auctioneer's business sign. The court said: "Strictly speaking, the plaintiff cannot maintain this action on the theory of trade-mark proprietorship, but the right he seeks to enforce will be protected, on the principle upon which courts of equity interfere to prevent illegitimate competition in trade or business by one seeking to acquire to himself the custom of another person by an unfair or fraudulent use of those signs, symbols, or devices which are used by, and are known to be used by, that other person. The defendant has just as much right to use in his advertisements the picture of a flag as the plaintiff has, but he has not the right to imitate those peculiar and fanciful arrangements of details which indicate to the public the plaintiff's special business sign."

But plaintiffs' case was not founded on the idea of unfair trade or unfair competition, and they have no right now to claim relief which would be altogether outside the case they stated and tried. In consequence of this we need not pass judgment upon the question whether in such action the facts of this case would entitle them to relief.

We note that the abstract of the record proper does not show that the trial court signed the bill of exceptions. Nor is it shown that there was an order entered of record that time to file a bill of exceptions was ex-

tended to the 3d day of the January term. Nor does it show that an order was entered of record overruling the motion for new trial. These matters are fatal to the case, unless there is error in the record proper, and would alone call for an affirmance. [Harding v. Bedoll, 202 Mo. 625; Pennowfsky v. Coerver, 205 Mo. 135; Stark v. Zehnder, 204 Mo. 442, 449; Alt v. Dines, 227 Mo. 418, 422; Wallace v. Libby, 132 S. W. 665; Keaton v. Weber, 136 S. W. 342.] And so we have decided at this term. [Nannie Floyd v. Modern Woodmen; Thorp v. Ry. Co.] In the latter case all the authorities are collected. The judgment is affirmed. All concur.