[Civ. No. 14998.   Second Dist., Div. Two.   Jan. 30, 1946.]

COLE OF CALIFORNIA, INC. (a Corporation), Respondent, v. GRAYSON SHOPS, INCORPORATED (a Corporation), Appellant.

Philip Subkow for Appellant.

Max Feingold and Theodore Rosenthal for Respondent.

FOX, J. pro tem.—This is an appeal by the defendant from a judgment determining that "the word Swooner is a valid and existing trade-mark for use on feminine wearing apparel owned by the plaintiff" and enjoining the defendant from selling or offering for sale or advertising any article of feminine wearing apparel under that name.

Plaintiff has been manufacturing women's and children's wearing apparel in the Los Angeles area since 1918. Early in December, 1943, the president of the plaintiff first thought of using the word "Swooner" as a trade-mark and soon thereafter discussed the matter with its advertising firm. In early January, 1944, the advertising firm started the preparation of full-page advertising material for such national magazines

as Vogue, Harpers, Mademoiselle, Charm, Parents and Life. The first of this advertising appeared in the May, 1944, issue of Harper's Bazaar. Plaintiff has invested some $15,000 in its national advertising campaign. Labels to be attached to the garments and bearing the word "Swooner" were printed prior to March 17, 1944. On this latter date plaintiff made its first shipment of garments so labeled to Neiman-Marcus in Dallas. On April 1, 1944, plaintiff filed in the office of the Secretary of State of the State of California a claim for trade-mark for the word "Swooner," used by it in connection with the sale of feminine wearing apparel, "including but not limited to dresses, bathing suits, swim suits, play suits, skirts, shirts, blouses, sweaters, hats, neckwear, turbans, lingerie, shoes made of fabric or fabric and leather, gloves, handkerchiefs, stockings and bobby sox." Thereafter on April 5, 1944, the Secretary of State issued to the plaintiff under the Great Seal of the State his certificate (No. 26494) of a claim for trade-mark for the word "Swooner" in accordance with plaintiff's application. During the months of March, April and May, 1944, plaintiff sold and delivered feminine wearing apparel under the trade-mark "Swooner" (and its related mark "Swoonsuit") to the value of $22,486.50. This merchandise was sold in both intrastate and interstate commerce.

The defendant which operates twenty-six stores on the Pacific coast first used the word "Swooner" in connection with the sale of bobby socks on March 3, 1944, only in store number 82 located at 737 South Broadway, Los Angeles. Upon that occasion there was placed in the window a cardboard sign approximately twelve inches by twenty-four inches stating "Swooner Anklet Sox, 4 pairs for $1.00, 8 attractive colors;" also, six small cards approximately three by five inches bearing the words "Swooner Anklet Sox, 4 pair, $1.00."

In a letter dated April 12, 1944, the store managers of defendant were advised that a chain-wide promotion sale of bobby socks would be had between April 17th and 29th, under the designations "Swooner" and "Swooner Sox."

Early in July, 1944, the show window of defendant's Crenshaw boulevard store in Los Angeles displayed a placard bearing the word "Swooner." In the window were not only bobby socks but also bathing suits, sun suits, shorts, sweaters and blouses. Defendant continued to use the word "Swooner," particularly in connection with the sale of bobby socks, until its use was restrained on July 13, 1944.

The court found, among other things, that the use of the placard and price tickets by the defendant was only a means of advertising the sale of bobby socks; that defendant did not advertise the sale of bobby socks under the name "Swooner" in newspapers, magazines, on the radio, or in any other medium; that by the defendant's use of the word "Swooner" between March 3, and March 17, 1944, it acquired no property rights in said word; and that the use of the word "Swooner" by the defendant is an infringement of the valid and existing trade-mark "Swooner," adopted, used and owned by the plaintiff.

Defendant's first contention is that plaintiff does not have a valid trade-mark in the word "Swooner" for the sale of bobby socks and other feminine wearing apparel. By the terms of section 14201, Business and Professions Code, "A trade-mark may not consist of a designation . . . that relates only to . . . (b) The quality of the thing marked." Defendant contends that under this code provision plaintiff does not have a valid trade-mark in the designation "Swooner" because such designation describes the class of trade for whom the goods are intended and therefore indicates the quality of the merchandise. There is no merit in this contention. The word "Swooner" does not relate to the character or quality of the merchandise. It certainly does not indicate the type or grade of material from which a garment is made, nor does it describe the weave, pattern, form, color, length or size of a bobby sock or other feminine wearing apparel. The designation is more suggestive of style than quality. A particular style of playsuit or bathing suit might be made of materials of different weights, weave, texture and durability. To describe a bobby sock as a "Swooner" sock does not indicate the quality of the material out of which it is made. To say, as defendant contends, that because bobby socks, sun suits, bathing suits, etc., which are sold under the designation "Swooner," are suitable for girls and women who are inclined to swoon when they hear the voice of a crooner indicates the quality of such wearing apparel is to confuse the quality of the merchandise with the quality or character of the persons wearing it. The fact that many ministers wear a cut-away coat in the pulpit does not indicate the quality of the coat but rather the style and the class of persons and occasions on which such a coat is worn. That "Swooner" is subject to trade-mark appropriation, finds support in *Hamilton Brown Shoe Co.* v. *Wolf Bros. & Co.*, 240 U.S. 251 [36

S.Ct. 269, 60 L.Ed. 629], which holds that the words "American Girl" are properly appropriated as a·trade-mark for women's shoes.

■ Defendant argues that to allow plaintiff the exclusive use of the designation "Swooner" for bobby socks would practically give it a monopoly in the sale of such merchandise. This conclusion is without foundation. We may not assume that a sufficiently large percentage of the girls and women who wear bobby socks swoon when they hear the voice of a crooner so that if all of them purchased bobby socks of a particular brand a monopoly would thus be created in the firm selling such brand. Likewise, we may not assume that the potential wearers of bobby socks are going to purchase such merchandise merely because they are sold under a designation which is also descriptive of their emotional outbursts and without consideration of other factors such as price and quality. Finally, we may not assume that swooning has reached such an exacting technique that those who indulge in it must prepare themselves in advance by dressing in a particular style and wearing a particular brand of socks or other apparel. On the contrary, it would seem that the American public can still be relied upon to base their purchasing decisions essentially upon quality, style and price rather than upon a passing whimsical emotion which may lend itself to a shrieking outburst upon hearing the alluring tones of a crooner. It may well be that many girls and women will have their attention drawn to feminine wearing apparel advertised and sold under the designation "Swooner," since it is what might be termed a "catchy" word, and that a substantial trade will be developed under such label and trademark, but that is no reason for denying plaintiff the right to the exclusive use of such designation. Defendant still has full opportunity to sell its merchandise to that segment of femininity which swoons as well as to those who do not swoon.

■ Defendant contends that it was the first user of the word "Swooner" and hence the court erred in determining that the plaintiff is the owner of the trade-mark. The findings, however, of the trial court in favor of the plaintiff on this issue have substantial evidentiary support. There can be no attack upon the findings that on March 17, 1944, plaintiff sold and delivered feminine wearing apparel to Neiman-Marcus in Dallas "upon which was affixed the trade-mark 'Swooner'," and that from and after that date plaintiff sold such apparel under that designation both within and

without this state. It is of course obvious that the labels bearing the word "Swooner" which were affixed to the merchandise shipped to Neiman-Marcus were prepared some time prior to the date of such shipment. From the fact that advertising of plaintiff's merchandise under the designation "Swooner" appeared in a national magazine in May, 1944, it may be assumed that the arrangements therefor had been completed at some substantially earlier time. The direct evidence, too, in behalf of plaintiff supports this idea. The fact that plaintiff went into a national advertising campaign to make known this new brand of its merchandise and spent a sizeable amount in carrying it on is not without significance in showing that plaintiff had appropriated the word "Swooner" as a trade-mark. Of like significance is the fact that on April 1, 1944, plaintiff filed in the office of the Secretary of State a claim for trade-mark for the word "Swooner"—used by it in connection with the various articles of clothing for women that it manufactured and sold. This was in effect an application for registration of the word "Swooner" as a trade-mark. (Bus. & Prof. Code, [1]§ 14230.) The certificate thereafter issued to the plaintiff by the Secretary of State constituted a registration of the trade-mark under section [2]14237 of the Business and Professions Code and such registration "is prima facie evidence of the ownership of the mark" by the express terms of section [3]14271 of said code. There is thus substantial support for the court's finding that "plaintiff adopted and used as its trade-mark on March 17, 1944, the word 'Swooner' in connection with the sale of feminine wearing apparel." ▪ In order for plaintiff to appropriate this word as a trade-mark it was not necessary for the same to be registered with the Secretary of State. (Bus. & Prof. Code, §§ 14202, 14270; *Ward-Chandler Bldg. Co.* v. *Caldwell*, 8 Cal.App.2d 375 [47 P.2d 758] ; 24 Cal.Jur. 623, § 10.) But such application and reg-

---

[1]"14230. Persons entitled to register: Filing of claim. Any person may register any trade-mark used by him in this State by filing a claim to it with the Secretary of State. (Added by Stats. 1941, ch. 58, § 1 p. 704.) "

[2]"14237. Issuance of certificate of registration. At the time of filing, the Secretary of State shall issue to the claimant a certificate of registration under the Great Seal of the State. (Added by Stats. 1941, ch. 58, § 1, p. 705.) "

[3]"14271. Evidentiary effect of registration. Every trade-mark registration on the records of the Secretary of State is prima facie evidence of the ownership of the mark. (Added by Stats. 1941, ch. 58, § 1, p. 706.) "

istration lend support to the finding that plaintiff had appropriated said word as a trade-mark in connection with the merchandise it manufactured and sold. (*Ward-Chandler Bldg. Co.* v. *Caldwell, supra.*)

■ Defendant bases its claim of prior use of the word "Swooner" on the display in its store window on Broadway in Los Angeles, placed there on March 3, 1944. In connection with this display, however, the court found that "defendant did not affix or attach any sign, card, label or other matter to any of the bobby socks offered for sale by it;" that the cards in this display "were the only cards, signs, or other indicia to the public used by the defendant until April 17, 1944, of the word "Swooner," and that "such use of the placard and price tickets by the defendant was only a means of advertising the sale of bobby socks." The evidence, together with the inferences which the trial court could reasonably draw therefrom, amply support these findings. When these facts are considered in connection with the character and arrangement of the display and the fact that it only appeared in the show window of a single store of defendant's Pacific coast chain it must be said that there is a substantial foundation for the trial court's further determination "That by the defendants' use of the word Swooner between March 3 and March 17, 1944, defendants acquired no property rights" therein.

■ Defendant, however, argues that if its use of the word "Swooner" was not sufficient to give it a prior trade-mark right in said word then its use cannot constitute an infringement of any trade-mark property plaintiff may have acquired therein; hence it was improper to restrain the further use of said word by the defendant. This argument is unsound. The use made by the defendant of the designation "Swooner" was substantially greater after March 17 than before that date. Up to that date its use had been limited to a single store in Los Angeles. But a month later a chain-wide promotion sale of bobby socks was undertaken by defendant under the said designation. Early in July a display window in the Crenshaw boulevard store of defendant in Los Angeles contained signs which reasonably could have led the purchasing public to believe that not only bobby socks but bathing suits, sweaters and play suits, which were also displayed in the window, were likewise being advertised for sale under the designation "Swooner." This, it will be noted, was after plaintiff's national advertising program had

got well under way. Defendant did not discontinue the use of the word "Swooner" in advertising the sale of bobby socks until this action was filed and a temporary restraining order issued. There is therefore ample justification for the trial court's finding that "the use of the word Swooner by the defendant is an infringement" of plaintiff's trade-mark, and that "plaintiff will suffer irreparable injury and damage by defendant's use" of said word and that "plaintiff has no adequate remedy at law."

Defendant also contends that since plaintiff had used the word "Swooner" on only certain of its line of feminine wearing apparel and had not used it on bobby socks the defendant could therefore not be prevented from using such designation on this particular item of clothing. This would unduly restrict plaintiff's use of its trade-mark. In its application to the Secretary of State for claim to trade-mark for the word "Swooner" plaintiff stated that it was engaged in the manufacture and sale of clothing and based its claim for trade-mark of said word on the use thereof in connection with the clothing it manufactured. Various items of women's wearing apparel were then enumerated including bobby socks. Under section 14231, the Secretary of State is authorized to establish classes of merchandise for purposes of trade-mark registration. Pursuant to this authority he has established class 39, consisting of clothing. To deprive plaintiff of the right to use its trade-mark upon the several items of clothing manufactured and sold by it and which were specifically listed in its said application and to allow a competitor to use the identical designation on a single item of such clothing would inevitably lead to confusion on the part of the purchasing public and give one firm the advantage of the advertising by the other and the good will built up by it. We are not unmindful that this case was not decided upon the theory of unfair competition but we mention this practical phase of the situation as a further reason for holding that plaintiff is entitled to use its trade-mark on the several items of women's wearing apparel manufactured and sold by it and listed in its application to the Secretary of State.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied February 19, 1946.