**WESTERN STOVE CO., Inc. v. GEO. D. ROPER CORPORATION.**

Civ. No. 7202.

United States District Court
S. D. California, Central Division.

Jan. 22, 1949.

Lyon & Lyon, Charles G. Lyon and Reginald E. Caughey, all of Los Angeles, Cal., for plaintiff.

John F. McCanna, of Chicago, Ill. and Harold W. Mattingly, of Los Angeles, Cal., for defendant and intervener.

J. F. T. O'CONNOR, District Judge.

The plaintiff, Western Stove Company, Inc., a California corporation, has brought suit herein against the defendant, Geo. D. Roper Corporation, a Delaware corporation, for infringement of its alleged common law trade-mark, "Town and Country"

on gas ranges, and for unfair competition; praying, inter alia, for a preliminary, perpetual, and a mandatory injunction, to which suit the said defendant, Geo. D. Roper Corporation, a Delaware corporation, has answered, praying, inter alia, the intervention of Geo. D. Roper Corporation, an Illinois corporation, and for the dismissal of the complaint. By way of answer and counterclaim in intervention, the said Geo. D. Roper Corporation has entered the case for infringement of its alleged common-law trade-mark, "Town and Country", on gas ranges, for unfair competition, and for infringement of its alleged trade-mark, "Town and Country", registered under the Trade-Mark Act of February 20, 1905, 33 Stat. 724, likewise praying, inter alia, for a preliminary and a perpetual injunction against the plaintiff herein. Counsel for all sides have been using the phrase, "Town and Country", and "Town & Country", apparently indiscriminately and synonymously, and this phrase will be so understood and so used by the court in this case.

The matter in controversy, exclusive of interest and costs, exceeds the sum of $3000.00; there is complete diversity of citizenship among the parties hereto, and this court has jurisdiction of the whole controversy.

The case has been submitted to the court for a decision on the pleadings, plaintiff's, defendant's and intervener's Stipulated Statement of Facts, and on briefs, from which the following facts appear:

(1) The plaintiff herein, Western Stove Company, Inc., a California corporation, was organized in 1923, and continuously thereafter has manufactured and sold stoves and ranges in intrastate and in interstate commerce throughout the United States, manufactured in two plants: one in Culver City, California, and the other in the State of Texas; with the volume of business in 1947 exceeding $7,500,000;

(2) The defendant herein, Geo. D. Roper Corporation, a Delaware corporation, is doing business in the State of California; has a regular and established place of business in the City of Los Angeles; and sells and distributes in certain localities in the United States, including the State of California, gas ranges and stoves manufactured and sold by Intervener;

(3) The Intervener herein, Geo. D. Roper Corporation, is an Illinois corporation, and has a regular and established place of business in the City of Rockford, State of Illinois. It was incorporated in 1919, and it and its predecessors in interest since 1885 have been continuously engaged in manufacturing and selling gas stoves and ranges at Rockford, Illinois; and said gas stoves and ranges have been sold, and are now being sold, by Intervener in interstate commerce in all states of the United States; the Intervener being one of the largest gas stove manufacturers in the United States with an annual volume of business in the sale of stoves during the past few years of approximately $10,000,000 to $15,000,000.

The Stipulated Statement of Facts in this case covers nineteen pages and voluminous attached exhibits, and the court feels it will be necessary to refer only to sufficient facts therein to apply the principles of law that will govern the decision herein.

The factual chronology of the condensed controlling events in the case are as follows—

*Plaintiff's factual chronology:*

In 1941, plaintiff planned to manufacture and sell a large gas range, and actually did manufacture one in the year 1941, placing one in the home of Henry Honer, President of plaintiff corporation, without any trademark thereon except the trade-mark "Western Holly". Plaintiff did not go forward with plans for manufacture and sale of stoves of this type and size because of war conditions, but, on or about November 1, 1946, Western Stove Company, Inc., commenced the manufacture of a large stove similar to that which it had manufactured in 1941.

On or about November 1, 1946 certain advertising agencies began the preparation of advertising material for use in connection with an advertising campaign for this stove, and Henry Honer and Mr. Roderick A. Mays, of one of the advertising agencies, had several discussions relative to the use of a suitable trade-mark for this range as "Town & Country".

On November 27, 1946 a wire was sent to Bacon & Thomas, Washington, D. C., requesting a search on "Town & Country", and a reply was received on November 29, 1946, indicating that "Town & Country" was available as a trade-mark.

Advertisements of this range as "Town & Country" by the plaintiff were first printed in December of 1946 and a quantity printed and sent to various customers of Western Stove Company, Inc., and a number of customers of plaintiff, all of Los Angeles, California, were orally advised in the latter part of December, 1946, and early part of January, 1947, by Mr. Barnes, Sales Manager of Western Stove Company, Inc., and by Mr. Henry Honer, President of Western Stove Company, Inc., that this company was bringing out a large stove under the name of "Town & Country".

On January 10, 1947, a communication was forwarded from Mr. Barnes to all salesmen of Western Stove Company giving information, including price, of the "Town & Country" stove, and was followed up by letters of January 15, 1947, to all its seven hundred dealers giving information as to the "Town & Country" stove.

. On January 8, 1947 an employee of Western Stove Company, Inc., delivered to Process Arts Company, Culver City, California, a requisition sheet for two silk screens to be used for the purpose of placing the trade-marks "Western Holly" and "Town & Country" on the large stoves then in process of being manufactured by Western Stove Company, Inc. The "Town & Country" stove, as manufactured by Western Stove Company, was designated as model D–472–GLC; and, in January of 1947, models were delivered to certain department stores in Los Angeles, Calif., but none of the stoves had any trade-mark thereon other than the trade-mark "Western-Holly".

In addition to the advertising in newspapers, the "Town & Country" range of Western Stove Company Inc. was made known to the public by means of radio advertising, in spot announcements. Commencing with January 19, 1947, and continuing on January 21st and January 23rd, 1947, spot announcements were given over the radio, and, commencing on December 1946, pamphlets were prepared giving the specifications and features of the "Town & Country" range of Western Stove Company Inc.

*The first stoves which had the trademark "Town & Country" thereon by the use of the silk screen obtained from Process Arts Company were delivered to May Company, Los Angeles, California, and to Barker Bros., Los Angeles, California, on January 30, 1947, and, subsequent to January 30, 1947 all of the large stoves manufactured by Western Stove Company, Inc., have had the trade-mark, "Town & Country", thereon when delivered to customers; and the said stoves were first sold in interstate commerce in March, 1947, with trademark "Town & County" thereon.*

Neither Western Stove Company, Inc., nor any of its officers or those in authorities or its attorneys had any knowledge of the adoption or contemplated use of the trade-mark, "Town & Country" by the defendant and/or intervener, prior to the receipt of a telegram from Geo. D. Roper Coporation on January 24, 1947, advising of the adoption of the trade-mark "Town & Country" by Geo. D. Roper Corporation.

*Defendant's and/or the intervener's factual chronology:*

On October 7th to the 11th, 1946, Roper exhibited at the 28th Annual Convention of the American Gas Association, at Atlantic City, New Jersey, a certain gas range which it featured as the "ultimate in automatic gas cookery", and this range was commonly referred to by the trade individuals attending this Convention as "The Roper $1000.00 beauty". It was not until January, 1947, however, that the first of these ranges made under production manufacture was ready for delivery, although several pilot models were produced in December 1946, and, for the purpose of factory and manufacturing identification, this range was designated model 9310; and

Following the Atlantic City Convention, Roper promptly proceeded with plans for advertising and selling model 9310 range nationally, and sought a distinctive trademark for the same. At a meeting in November 1946, at the Roper plant attended

by Cy. Edwards, advertising manager for Roper, residing at Rockford, Ill. and by E. "L." Jeanmaire, of the advertising agency of Hollingsworth & Collins, Rockford, Ill., the name of "Town & Country" was selected as a trade-mark.

On December 27, 1946, Cy Edwards, advertising manager of Roper, wrote to John F. McCanna, patent attorney for Roper, asking whether Roper would be allowed to use the name "Town & Country" as a trade-mark on its new range. Responding to said letter, said attorney made an investigation through the records of a well-known trade-mark bureau in Chicago, Ill., and on January 9, 1947, verbally advised said Cy Edwards that, in said attorney's opinion, Roper could register the name, "Town & Country", as a trade-mark for gas stoves and ranges in Class 34 in the United States Patent Office, under the Trade-Mark Act of 1905; and

On or about December 16, 1946, one of Roper's sales representatives made an interstate sale of a Roper model 9310 gas range, and photographs of the "Town & Country" label on said model were taken for the purpose of providing prints to be used as facsimiles in an application by Roper to register its said trade-mark in the United States Patent Office. The prints (Roper Exhibit N) were used as facsimiles in an application for registration of the trade-mark in the United States Patent Office, Washington, D. C. under the Trade-Mark Act of February 20, 1905. U.S.C.A.Title 15, Chapter 3. The application was signed January 27, 1947 on behalf of Roper by its Vice-President, E. Carl Sorby; and the application and facsimiles were filed in the Patent Office on January 31, 1947, Serial No. 516,729, on advice of counsel, John F. McCanna. In due course, after examination by officials of the Patent Office it was passed for publication and was published in the official Gazette of November 11, 1947 at page 247 thereof.

No notice of opposition having been filed against the registration of said trade-mark by Roper, the same was duly registered under the law to Geo. D. Roper Corporation, of Rockford, Ill., a corporation of Illinois, and granted on March 9, 1948, No. 437,191, a certified copy of which registra-

tion is on file in this cause as Roper Exhibit A, attached to intervener's counterclaim, by amendment.

On January 23, 1947 and again on March 2, 1947, Roper, after receiving notice on January 20, 1947 of plaintiff's advertisements, exemplified by plaintiff's Exhibit 17, gave notice by telegram to Western Stove Company of Roper's claimed trade-mark rights in the words "Town & Country" for gas ranges, and requested said Western Stove Company to discontinue the use of these words in the sale of gas ranges.

Subsequent to receiving notice of plaintiff's designation of the trade-mark, "Town & Country", in its advertising, defendant and/or the intervener caused labels to be made with the trade-mark thereon and attached same to a stove which was delivered to the Illinois Central Railway at Rockford, Ill. on January 24, 1947, for shipment to Tampa, Florida. This label was made January 23, 1947. It is shown by the Stipulated Statement of Facts that subsequent to January 24, 1947, defendant and the intervener sold numerous stoves and ranges with the trade-mark, "Town & Country", thereon throughout the United States including California.

It has been further stipulated between the respective parties hereto that the stoves of plaintiff and Roper bearing the trade-mark, "Town & Country", thereon are directly competitive: the trade-mark is used upon the same class of goods, i. e., stoves and ranges; and the result of the use of said trade-mark by plaintiff and Roper would create confusion in the trade and amongst the purchasing public.

From the foregoing summary of the Stipulated Statement of Facts, it is clear that plaintiff and intervener herein both conceived the phrase, "Town & Country", for their larger gas ranges at approximately the same time, namely in November of 1946, and apparently coincidentally and independently of the other; and, from the summary, the court adopts the following postulates as a predicate for the application of the germane principles of law, hereinafter to be discussed, as follows—

(1) That the plaintiff herein was using, in its written advertisements, circulars to

its salesmen, and announcements over the radio, the phrase, "Town & Country" with reference to its larger stoves and ranges *prior* to the time when Roper used this phrase in advertising its similar product to the public;

(2) That Roper knew that the plaintiff was contemplating the use of, or was using, this trade-mark name in its advertising prior to the time when it (Roper) filed its application for a federal trade-mark under the Act of 1905; and

(3) That Roper was the first one to actually attach this trade-mark "Town & Country" to its product, or a container thereof, either in intrastate, or in interstate, commerce; and that such affixation was subsequent to the advertising of the same phrase, "Town & Country" by the plaintiff herein.

It is the plaintiff's contention that the intervener's trade-mark registration under the Trade-Mark Act of 1905 conferred no new rights to the trade-mark claimed, or any greater rights than already existed at common law without registration, citing Macaulay v. Malt-Diastase Co., 55 App. D.C. 277, 4 F.2d 944; General Baking Co. v. Gorman, 1 Cir., 3 F.2d 891; McIlhenny Co. v. Gaidry, 5 Cir., 253 F. 613, 616; Pulitzer Pub. Co. v. Houston Printing Co., D. C., 4 F.2d 924, 926, affirmed 5 Cir., 11 F.2d 834; and, for that reason, the plaintiff states it did not choose to file an application for federal registration of the trade-mark, "Town & Country", under the 1905 Act.

■ While the defendant and the intervener do not concede that they are in anywise prejudiced by their knowledge that the plaintiff was using the phrase, "Town & Country" in its circulars, advertising, letters to salesmen and radio broadcasting, prior to intervener's application for a trade-mark registration, intervener concedes that its registered trade-mark under the Act of 1905 conferred no greater rights to the trade-mark than it would otherwise have had at common law, except for the presumption of ownership thereto. This is a correct statement of the

law, and it will be so understood by the court; and the plaintiff herein will not be prejudiced by reason of the fact that it did not obtain a trade-mark under the Act of 1905.

Plaintiff contends that, because, commencing with the latter part of November, 1946, and substantially continuously thereafter, it was active in bringing to the notice of its salesmen, dealers, and the public, the fact that its larger stoves and particularly model D–472–GLC were designated as "Town & Country", all of which activities were done by plaintiff without any knowledge of defendant's and/or intervener's selection or designation of the trade-mark, "Town & Country", for use on Roper stoves and ranges (it was not until January 23, 1947 that plaintiff became aware of selection of this trade-mark by defendant and/or intervener), it, plaintiff, acquired the prior right to use this trade-mark.

■ While there is an allegation in the pleadings of the plaintiff that the use of this trade-mark by defendant and/or intervener would constitute a fraud and deception upon the public, it would seem to the court that both sides originally had adopted the phrase, "Town & Country" without the knowledge of the action of the other, and the court is satisfied that all parties hereto, while insisting upon their legal rights, were acting in good faith toward each other; and, because of the time element, the doctrine of laches is not involved.

The pivotal and paramount question for the court to decide, is: just what was essential for a person desiring to obtain a common law trade-mark, or a statutory trade-mark under the Act of 1905, to do— i. e., was newspaper advertising, and radio broadcasting, and/or the dissemination of information by way of circulars of the trade-mark, sufficient to obtain a prior right to the use of the mark, or, on the other hand, was it necessary to go a step further and affix this trade-mark to the product itself, or at least to the containers in which it came.[1]

---

[1] "The term 'trade-mark' includes any mark which is entitled to registration under the terms of this Act, and whether registered or not, and a trade-mark shall be deemed to be 'affixed' to an article *when it is placed in any manner in or upon either the article itself or the receptacle or package or upon the en-*

Intervener's registration, No. 437,191, is prima facie evidence of ownership, Trade-Mark Act of 1905, § 16, 33 Stat. 728, U.S.C.Title 15, Sec. 96; and where one claims ownership of a mark as against one who has registered the mark, the burden of proof is upon such claimant, in this case the plaintiff, Walter Baker & Co. v. Delapenha, C.C., 160 F. 746, 747. In this case the authorities cited by the defendant and/or the intervener to sustain its or their position would seem to be conclusive in answering this pivotal question, irrespective of the burden of proof. The law prior to the Lanham Act of July 5, 1946, effective July 5, 1947, c. 540, Title I, Sec. 1, 60 Stat. 427, 15 U.S.C.A. § 1051.

Nims in his "Unfair Competition and Trade-marks", Fourth Edition, in defining the acquisition of a trade-mark, and its method of application, states the law in Vol. 1, page 523, as follows:

"It must be used on the commodity it is designed to identify or on its container. It is not enough to select a mark, and having selected it, to advertise it. It must be used as a trade-mark upon something actually sold or offered for sale in the usual course of business, and it must be physically affixed thereto."

In Columbia Mill Co. v. Alcorn, 150 U.S. 460, 463, 464, 14 S.Ct. 151, 152, 37 L.Ed. 1144 decided in 1893 the court said:

" * * * the exclusive right to the use of the mark or device claimed as a trademark is founded on priority of appropriation; that is to say, the claimant of the trademark must have been the first to use or employ the same on like articles of production."

In Amoskeag Mfg. Co. v. Trainer, 101 U.S. 51, 25 L.Ed. 993, decided in 1880, the court said:

"Everyone is at liberty to affix to a product of his own manufacture any symbol or device, not previously appropriated, which will distinguish it from articles of the same general nature manufactured or sold by others, and thus secure to himself the benefits of increased sale by reason of any peculiar excellence he may have given to it."

In United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 51, 63 L.Ed. 141, decided in 1918, the court said:

"Undoubtedly, the general rule is that, as between conflicting claimants to the right to use the same mark, priority of appropriation determines the question", citing authorities.

In Carroll & Son Co. v. McIlvaine & Baldwin, C.C.N.Y., 171 F. 125, 128, decided in 1909, the court said:

"To him who first did bring the article into the market and did first affix a distinguishing name or symbol should be granted protection * * *", citing authorities.

In Guth Chocolate Co. v. Guth, D.C.Md., 215 F. 750, 767, decided in 1914, affirmed 4 Cir., 224 F. 932, the court said:

"A trade-mark must in some way be affixed or attached to the goods to be designated by it or to the packages in which they are sold. The exclusive right to it can be secured in no other way." (Citing authorities.)

In Ritz Cycle Car Co. v. Driggs-Seabury Ordnance Corp., D.C.N.Y., 237 F. 125, 128, decided in 1916, the court said:

"It is undeniable that the general rule is that there must have been a user of an adopted trade mark * * * in connection with the goods or article to which it is applied, as its mere adoption, even with an expenditure of money in preparation for its use, confers no property right."

In Waldes v. International Manufacturers Agency, D.C.N.Y., 237 F. 502, 505, decided in 1916, Judge Learned Hand said:

" * * * it is the priority of user alone that controls, even though, when the defendant comes into the field, it may not be fully established, or may not even be enough established to have become associated largely in the public mind with the plaintiff's make. * * * Were it not so,

---

velope or other thing in, by, or with which the goods are packed or enclosed or otherwise prepared for sale or distribution." (Italics supplied.)

Trade-Mark Act of 1905, Feb. 20, 1905, c. 592, Sec. 29, 33 Stat. 731, June 10, 1938, c. 332, Sec. 5, 52 Stat. 639. Title 15 U.S.C. § 108.

it would be of extreme difficulty to show at just what point in time the mark became associated with the maker in enough of his customers' minds to justify the inference that the defendant's use might have become confusing. Therefore, once his use begins, the rest of the public must avoid his fanciful mark."
and

In Pecheur Lozenge Co. v. National Candy Co., D.C.N.J., 36 F.Supp. 730, 734, decided in 1940, a common law case, the court said, in holding that the plaintiff did not show a trade-mark use:

" * * * it is clear that the manner in which it used the word in its catalog and price lists from 1908 to 1936 was not a trade-mark use. * * * It was not *physically applied or affixed to either the wafers or the containers in which they were sold.* (Italics supplied.)

Furthermore, the right to a trademark does not depend upon any particular period of use, but once it is adopted in good faith and used, the right thereto inures, and will prevail against any subsequent user. Walter Baker & Co. v. Delapenha, C.C.N.J., 160 F. 746, 748; Wallace & Co. v. Repetti, Inc., 2 Cir., 266 F. 307, 308. *Use in advertising and the like is not trademark use:*

Nims, in discussing acquisition of a trade-mark, states, Vol. 1, at page 636, the rule as follows:

"Use on a sign attached to a building or in a shop is not a trade-mark use[18]. It is not enough to place a card bearing the name or words claimed as a trade-mark loosely on goods exhibited for sale[19]. Nor is use on an invoice[20] or on price lists or advertising (1) sufficient."

"[18] Covert v. Bernat, 156 Mo.App. 687, 138 S.W. 103 (1911) Diederich v. [W.] Schn[e]ider Wholesale, 195 F. 35 [L.R.A. 1915B, 889] (CCA 8, 1912).

"[19] Oakes v. St. Louis Candy Co., 146 Mo. 391, 48 S.W. 467 (1898).

"[20] Parsons Trading Co. v. Hoffman, 107 Misc. 536, 177 N.Y.S. 713; (1919) affirmed 200 App.Div. 900, 192 N.Y.S. 942; (1922) (1) DeLong Hook & Eye v. Hump Hairpin Co., 297 Ill. 359, 130 N.E. 765 (1921);

Bayuk Cigars v. Schwartz, 1 F.Supp. 283, 286 (D.C.N.J.1932)."

In the case of Bayuk Cigars, Inc., v. Schwartz, D.C.N.J., 1 F.Supp., 283, the plaintiff conducted a campaign of advertising using the word "Phillies", and its jobbers and purchasers were accustomed to use the word, "Phillies", as designating its cigar, but the plaintiff did not use the word, "Phillies", on its product until November 8, 1929, after which time the mark was stamped on the box with a rubber stamp, until January 1, 1930, and after that date the cigar boxes were labeled with the word, "Phillies". This was subsequent to defendant's use of October 18th, 1929, at which time he commenced to market cigars labeled "Philadelphia Phillies". The court, in holding that defendant established the right to the mark, "Phillies", said, 1 F.Supp. at page 286:

"The cases seem to be uniform in holding that the right arises out of the actual application of the mark to vendible goods."

In the "Phillies" case, defendant's use preceded plaintiff's use by about twenty-one days, from October 18, 1929 to November 8, 1929. See also Gemex Co. v. J. & K. Sales Co., Inc., D.C., 76 F.Supp. 150, affirmed 1 Cir., 166 F.2d 569 and DeLong Hook & Eye Co. v. Hump Hairpin Mfg. Co., 1921, 297 Ill. 359, 130 N.E. 765. See also Consumers Co. v. Hydrox Chemical Co., 1913, 40 App.D.C. 284, 192 O.G. 744.

Furthermore, a single instance of use, coupled with continued use, is sufficient proof of ownership, Worden v. Cannaliato, 1923, 52 App.D.C. 254, 285 F. 988, 990; Ritz Cycle Car Co. v. Driggs-Seabury Ordnance Corp., D.C.N.Y. 237 F. 125, 128; California Spray-Chemical Corp. v. Ansbacher Siegle Corp., 55 U.S.P.Q. 298, 300; J. C. Penny Co. v. B. Lowenstein & Bros., Inc., 67 U.S.P.Q. 231, 232.

While it is true that the use of this phrase, "Town & Country", by the defendant and/or the intervener occurred after intervener's knowledge of the Barker Bros. newspaper advertisement of the plaintiff's product, this, in the court's opinion, is not material. The record shows that the defendant and/or the intervener were or was the first to affix this trade-mark,

"Town & Country" to certain of its ranges, and this is the controlling factor; and, after learning that the. plaintiff had commenced using this trade-mark to its product, the intervener promptly notified the plaintiff, by telegram dated January 23, 1947, of its (the intervener's) rights.[2]

As the court understands the facts in this case, the plaintiff herein at the time in question was also manufacturing smaller and lower priced gas ranges or stoves to which the trade-mark, "Town & Country", was not intended to apply, but how was the buying public to become aware of the stoves to which this trade-mark was intended to apply unless and until the trade-mark was attached to the stoves themselves or to their containers?

While the opinion of this court would remain the same even though all of the stoves and ranges manufactured by the plaintiff, advertised in the newspapers and broadcast over the radio, were intended to be known as "Town & Country", instead of only the larger and more expensive models, bearing in mind that the purpose of a trade-mark is not only to protect the reputation of the manufacturer, *but also to reasonably assure the public that it is buying the particular product of the manufacturer it has in mind,* although the name of the manufacturer may not be in doubt, it is not quite clear to the court how the public was to be given reasonable assurance that it was actually purchasing a "Town & Country" gas range from the plaintiff instead of another and less expensive model. In other words, would it not be taxing a little too severely the credulity of the buying public to expect it to believe that the stove or range it was buying was a "Town & Country" gas range solely because it had read a description thereof in the advertisements in the newspapers and had heard the announcements thereof over the radio, until this "Town & Country" label actually was affixed to the stove itself, or at least to its container?

The intervener, on the other hand, while it likewise manufactured a smaller stove to which the trade-mark was not intended to apply, is only contending that it applied to those stoves or the containers thereof so actually marked. This line of reasoning makes common sense, and would appear to be part of the basic philosophy upon which the preceding decisions are predicated. In the court's opinion it is more in consonance with the decisions which hold that mere advertising of a product under a particular name is insufficient for trade-mark protection without actually affixing the trade-mark to the product itself, or at least to its container.

The foregoing cases, of course, were decided prior to, or at the time the Trade-Mark Act of 1905 was the. law, and were not, and are not, controlled by the Lanham Amendment of July 5, 1946, effective July 5, 1947, about to be discussed.

*The Lanham Trade-Mark Act of July 5, 1946, effective July 5, 1947:*

The plaintiff takes the further position that the Act of July 5, 1946, c. 540, Title I, Sec. 1, 60 Stat. 427, Sec. 1051 of Title 15 U.S.C.A., is controlling in this case, but the defendant and the intervener contend that, because the application of Roper for a trade-mark, "Town & Country", was pending on July 5, 1947, the Act of July 5, 1946 is not applicable.

The plaintiff states its position, in haec verba, as follows:

"A trade-mark has been frequently defined. One of the most quoted definitions is that of Mr. Francis H. Upton in opening his treatise on the Law of Trade-marks published in 1860, and which is as follows: 'A trade-mark is a name, symbol, figure, letter, form or device adopted and used by a manufacturer or merchant in order to designate the goods that he manufactures or sells and distinguish them from those manufactured or sold by another to the end that they may be known in the market as his, and thus enable him to secure such profits as result from a reputation for superior skill, industry or enterprise.'

"Mr. Harry D. Nims, currently recognized as the foremost authority on Unfair Competition and Trade-marks, in his Trea-

---

[2] Nims, Vol. 1, at page 627, states: "Even though the second adopter of the trade-mark did not invent it or discover it himself but learned of it from the original discoverer, if he first used it as a trade-mark he is its owner."

tise , entitled 'Unfair Competition and Trade-marks', page 514, Volume 1, states: "In the mass of writing on this subject that has appeared since Mr. Upton wrote this paragraph, it would be difficult to find a clearer or more comprehensive statement of the concept of a trade-mark.'

"This definition of Mr. Upton's apparently is the definition used in the new Lanham Trade-Mark Act of July 5, 1946, and which went into effect on July 5, 1947. The term 'trade-mark' is defined in said Act in Sec. 45 as follows: 'The term "trade-mark" includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others.'

"The Lanham Act, i. e., the Trade-Mark Act of 1946, was adopted because the prior Trade-Mark Act of 1905 did not meet the requirements of modern commerce. It was recognized that the Trade-Mark Act of 1905 did not give sufficient protection to owners of trade-marks or allow the registration of marks which had become valuable because of their association with the goods, products and services of their owners. The Lanham Act, therefore, is a modern concept of trade-mark rights and endeavors by its terms to provide a uniform trade-mark law for the United States.

"By its terms the Lanham Act Provides, Sec. 45, that a trade-mark shall be deemed to be used in commerce and on goods when it is placed in any manner on the goods or their containers *or the displays associated* therewith and on services when it is used or displayed in the sale or advertising of services. In addition the goods, of course, must be sold or transported in commerce and the services rendered in commerce, as defined by said Act." (Italics supplied.) (From Plaintiff's opening brief, pp. 6–8.) *Intervener Roper not controlled by the Lanham Act in this case:*

■ The application of Intervener Roper for a trade-mark "Town & Country" for certain of its gas ranges, under the Act of 1905, was signed January 27, 1947, by its Vice-President E. Carl Sorby, and said application, including said facsimiles, was filed in the United States Patent Office on January 31, 1947, Serial No. 516,729, and was issued on March 9, 1948. The plaintiff herein takes the position that, although the trade-mark registration secured by Intervener was issued under the Act of February 20, 1905, it was issued on March 9, 1948, subsequent to the effective date of the new trade-mark Act commonly known as the Lanham Act, which went into effect on July 5, 1947, Public Law 489, Seventy-ninth Congress, Chapter 540, Second Session, 15 U.S.C.A. § 1051 et seq., and, therefore, that under Sec. 46(a) of the Lanham Act, all previous trade-mark Acts, including the Act of 1905, were repealed and registrations thereunder, by the provisions of Sec. 46(b) are subject to the provisions of said Lanham Act. Plaintiff cites the California Fruit Growers Exchange v. Sunkist Baking Co., 7 Cir., 166 F.2d 971, 973, as authority for its contention that the Lanham Act applies to this case. The court does not consider the case cited is applicable to the facts in the case before the court; and is clearly of the opinion that the Lanham amendment does not apply in the case before the court.[3]

The plaintiff herein did not file for a trade-mark registration under the Act of 1905, and neither did it file for a trade-

---

[3] Pending proceedings and existing registrations and rights under prior act. Section 46(a) of Act July 5, 1946, cited to text, provided in part that this chapter, except as otherwise specifically provided therein, shall not effect any suit, proceeding or appeal pending on the effective date of this chapter and that the repeal of all inconsistent Acts "shall not affect the validity of registrations granted *or applied for* under any of said Acts prior to the effective date of this Act (July 5, 1947), or rights or remedies thereunder except as provided in sections 8, 12, 14, 15, and 47 of this Act (sections 1058, 1062, 1064, 1065, and note to this section of this title)."

Sections 46(b) and 47 of Act July 5, 1946, cited to text, provided: "(b) Registrations now existing under the Act of March 3, 1881, or the Act of February 20, 1905 (former sections 81–109 of this title), shall continue in full force and effect for the unexpired terms thereof and may be renewed under the provisions of section 9 of this Act (section 1059 of this title) * * *" (Italics supplied.) See note to Title 15, U.S.C.A. § 1051.

mark registration under the Lanham amendment, and is, therefore, subject to the law governing common law trade-marks heretofore discussed; but the intervener, on the other hand, did obtain registration for "Town & Country" under the Act of 1905, and elected not to come within the Lanham amendment of July 5, 1946, effective July 5, 1947. The court concludes that the Lanham Amendment does not control this case; and, under the foregoing authorities, elucidating the law pertaining to a common law trade-mark, and trade-marks under the Act of 1905, the court finds that the intervener has conclusively demonstrated, beyond any reasonable doubt and regardless of the presumption of the right to the use of the trade-mark by reason of registration under the Act of 1905, its right to the use of the trade-mark, "Town & Country". However, no damages for the alleged interim unfair competition will be allowed either side.

Under the foregoing authorities, it is clear that a person does not acquire a prior right to a common law trade-mark, or a trade-mark under the Act of 1905, solely because he was the first one to advertise or circularize the trade-name; and neither was the intervener prejudiced in this case by reason of the fact that it knew of the plaintiff's use of this mark in its advertising or its contemplated use of the phrase, "Town & Country" at the time it (intervener) filed application for a federal trade-mark registration, but it was the actual affixation of the trade-mark to the product of the intervener, or of its containers, that was and is the governing factor.

*The Lanham amendment generally:*

As stated by counsel for the plaintiff, the "Lanham Act * * * was adopted because the prior Trade-Mark Act of 1905 did not meet the requirements of modern commerce. It was recognized that the Trade-Mark Act of 1905 did not give sufficient protection to owners of trade-marks or allow the registration of marks which had become valuable because of their *association* with the goods, products and services of their owners." (Italics supplied.) [4]

Under the foregoing decisions construing the requirements for obtaining a common law trade-mark, as well as a trade-mark under the Act of 1905, it is clear that the trade-mark had to be affixed substantially either to the product, or the container thereof [5]; whereas the Lanham Amendment concededly gives broader protection to a trade-mark applicant in that *displays associated with the product* would seem to be sufficient to give a prior right to a trade-mark, i. e., the date of the trade-mark would relate back to the date of the displays. Under the common law and the Trade-Mark Act of 1905 this would not have been sufficient. The court is not deciding the definition of "displays" and whether they are broad enough to cover advertising and circulars, nor of "marks".

Under the Lanham Act of July 5, 1946, c. 540, Title I, Sec. 1 et seq., 60 Stat. 427, Sec. 1051 et seq. of Title 15 U.S.C.A., while the owner of a trade-mark used in commerce may register his trade-mark under this chapter by showing, among other things, the *"date of applicant's first use of the mark, the date of applicant's first use of the mark in commerce,* the goods in connection with which the mark is used *and the mode or manner in which the mark is used in* connection with such goods" (italics supplied), under the Act of 1905, an applicant obtained no greater right than he

---

[4] The Lanham Act provides in Sec. 45, Title 15, U.S.C.A. § 1127, regarding the meaning of "Use in commerce": "For the purposes of this chapter a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or their containers *or the displays associated therewith* or on the tags or labels affixed thereto and the goods are sold or transported in commerce." (Italics supplied.)

[5] Sec. 108 of Title 15 U.S.C., Feb. 20, 1905, c. 592, Sec. 29, 33 Stat. 731, June 10, 1938, c. 332, Sec. 5. 52 Stat. 639, provides: " * * * The term 'trade-mark' includes any mark which is entitled to registration under the terms of this Act, and whether registered or not, and a trade-mark shall be deemed to be 'affixed' to an article *when it is placed in any manner in or upon either the article itself or the receptacle or package or upon the envelope or other thing in, by, or with which the goods are packed or enclosed or otherwise prepared for sale or distribution."* (Italics supplied.)

already had under a common-law trademark, except for the presumption of ownership thereto. Walter Baker & Co. v. Delapenha, C.C., 160 F. 746, 747.

The California state courts and statute follow the common law. It is stated in 24 Cal.Jur., at page 623:

"At common law one's right to a trademark accrues to him from its prior adoption and use for the purpose of designating the particular goods he manufactures and sells."

In Sec. 3199 of the California Political Code, we read:

"Sec. 3199. Any person who has first adopted and used a trade-mark or name, whether within or beyond the limits of this state, is its original owner." See also Derringer v. Plate, 29 Cal. 292, 293, 87 Am. Dec. 170; Evans v. Shockley, 58 Cal.App. 427, 209 P. 42; Cole of California, Inc., v. Grayson Shops, Inc., 72 Cal.App.2d 772, 165 P.2d 963.
and

The Business and Professions Code of the State of California affirms the common law by providing:

"Sec. 14270. Persons regarded as owners. Any person who has first adopted and used a trade-mark, whether within or beyond the limits of this State, is its original owner."

Obviously, the plaintiff herein would like to bring itself, as well as the defendant and/or the intervener, within the scope of the Lanham amendment, and have its use of the trade-mark "Town & Country" relate back to the time the phrase was utilized in its circulars and other methods of communication in December of 1946, and thus antedate its use by the defendant and/or the intervener on its product in interstate commerce on January 23, 1947.

The court, however, is not dealing with a case where the plaintiff had registered its trade-mark, "Town & Country", under the Lanham amendment without interference, and was either prosecuting or defending infringement thereof and contending that the displays associated with its product antedate the affixation of the mark to the goods or their containers of the defendant and/or the intervener, and, therefore, carried the use of the mark back to that time; but we are dealing with a case where the plaintiff is bound by the authorities interpreting a common law trade-mark, or a trade-mark registered under the 1905 Act, and where the plaintiff did not even deem it advisable to obtain registration under the Act of 1905, and obtain the presumption of ownership, and was satisfied to depend upon its common law rights. The court is unable to see how the plaintiff herein can claim any benefit under the Lanham amendment in this case.

The intervener herein is, in the court's opinion, entitled to the exclusive right to use the trade-mark, "Town & Country", or "Town and Country" on its stoves and gas ranges, both under the common law and the Act of 1905.

The prayer of the defendant for a dismissal of the complaint will be granted, and the intervener will be given a perpetual and final injunction restraining the plaintiff from using the trade-mark, "Town & Country" or "Town and Country" on any of its stoves and gas ranges.

Counsel for the intervener and the defendant will prepare Findings of Fact and Conclusions of Law and a form of judgment in accordance with the views expressed in this opinion, for the signature of the court, within ten days after notice of this ruling, and after submitting same to counsel for the plaintiff for approval as to form.